Daniel T. Shvodian (SBN 184576)
James C. Pistorino (SBN 226496)
Richard C. Lin (SBN 209233)
HOWREY LLP
1950 University Avenue, 4th Floor
East Palo Alto, CA  94303
Telephone:  (650) 798-3500
Facsimile:   (650) 798-3600
Email:  *shvodiand@howrey.com*
Email:  *pistorinoj@howrey.com*
Email:  *linrichard@howrey.com*

Attorneys for Plaintiff TECHSAVIES, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OFCALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TECHSAVIES, LLC,<br><br>       Plaintiff,<br><br>       vs.<br><br>WDFA MARKETING, INC.,<br><br>       Defendant. | Case No. CV-10-1213 BZ<br><br>**PLAINTIFF TECHSAVIES, LLC'S NOTICE OF MOTION AND MOTION FOR SANCTIONS**<br><br>Date:        February 16, 2011<br>Time:       10:00 a.m.<br>Courtroom: G, 15th Floor<br>Judge:      Hon. Bernard Zimmerman |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND ..........................................................................................2

III. ARGUMENT ...................................................................................................................7

    A. A Sanction Deeming Minimum Revenue Established And No Offsets Or Deductions Is Warranted To Address The Prejudice Techsavies Has Suffered ................................................................................................................7

    B. WDFA Should Be Barred From Offering Or Relying On Any Of The Late Produced Materials ...............................................................................................11

        1. Materials Produced After The Close Of Discovery .........................................12

            a. All Other Materials................................................................................12

            b. The December 10 Production................................................................12

        2. Materials Produced Two Days Before The Close Of Discovery .......................13

IV. CONCLUSION ..............................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Hansel v. Shell Oil Corp.*,
    169 F.R.D. 303 (E.D. Pa. 1996) ................................................................................................8

*Klonoski v. Mahlab*,
    156 F.3d 255 (1st Cir. 1998) ..................................................................................................11

*SEC v. Elfindepan, S.A.*,
    206 F.R.D. 574 (M.D.N.C. 2002)..............................................................................................8

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ................................................................................................11

**STATUTES**

17 U.S.C. § 504(b) ........................................................................................................................10

**RULES**

Federal Rule of Civil Procedure 26(e) ..........................................................................................14

Federal Rule of Civil Procedure 33(d) ..................................................................................3, 8, 9

Federal Rule of Civil Procedure 37 Advisory Committee Notes (1993) ......................................11

Federal Rule of Civil Procedure 37(b) ..........................................................................................14

Federal Rule of Civil Procedure 37(b)(2) ...............................................................................10, 11

Federal Rule of Civil Procedure 37(c) ....................................................................................11, 14

Federal Rule of Civil Procedure 37(c)(1) ...............................................................................10, 11

**NOTICE OF MOTION AND MOTION FOR SANCTIONS**

PLEASE TAKE NOTICE THAT on February 16, 2011, at 10:00 a.m., in Courtroom G of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California, Plaintiff Techsavies, LLC ("Techsavies") will and hereby does move the Court for sanctions against Defendant WDFA Marketing, Inc. ("WDFA") for its failure to produce critical discovery until just before as well as after the deadline for fact discovery.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the supporting Declaration of Richard C. Lin and accompanying exhibits filed herewith, all pleadings and papers on file in this action, oral argument as permitted by the Court, and such other evidence or argument as may be presented to the Court before, at, or following the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Starting with the very first discovery efforts by Techsavies, this case has been marked by a pattern of discovery abuse by defendant WDFA and its counsel. Techsavies and its counsel have sought to avoid burdening the Court with motion practice. However, WDFA's discovery conduct has severely prejudiced Techsavies. Prompting the present motion was:

(1) the production of more than 87,000 documents two days before the close of discovery;

(2) the production of more than 120,000 documents 10 days after the close of discovery;

(3) the production of yet more documents and amended discovery responses after the telephone conference with the Court more than two weeks after the close of discovery; and

(4) the service of an expert report relying on the late produced information.

The late produced materials include thousands of emails and other documents related to the substantive issues in this case. As a result of the above, 85% of all the documents produced by WDFA were produced within two days of or after the close of discovery in this case (50% after the close of discovery). WDFA's failure to comply with its discovery obligations has prevented Techsavies from: (1) developing an accurate understanding of the revenues and expenses associated with its claims,

including the copyright infringement and breach of contract causes of action; (2) finding out the truth regarding the software copying; and (3) responding to WDFA's counterclaims.

As a result of WDFA's discovery misconduct, Techsavies seeks three items of relief:

(1) establishing that the minimum gross revenues attributable to Project632 are twice the credit card transactions through the site since its inception, given WDFA's failure to produce complete information regarding the co-payments received from MetroPCS;

(2) barring WDFA from offering any evidence of deductions or offset from that figure, given WDFA's failure to produce supporting documentation for those deductions; and

(3) precluding WDFA and its experts from offering or relying on any of the late produced information.

## II. FACTUAL BACKGROUND

By way of background, this case relates to a website developed primarily for initial use by MetroPCS franchisees that facilitates advertising and marketing campaigns. Images of brochures or other advertising materials are uploaded to the website along with various marketing campaigns that are available to the franchisees. Using the website, the franchisees can select the marketing campaign they are interested in participating in (*e.g.*, door hangers, direct mailings, etc.). The franchisees' purchases are charged to credit cards on file for the franchisees. In addition, MetroPCS provides "co-payments" where the purchases by franchisees are matched to varying degrees (including greater than 100%) by MetroPCS.

On March 23, 2010, Techsavies filed a Complaint against WDFA including allegations of copyright infringement, breach of contract, for dissolution of partnership, and unjust enrichment. (Dkt. No. 1.) On May 13, 2010, after requesting and receiving an extension to answer, WDFA answered Techsavies' allegations and asserted counterclaims of breach of contract, fraud, and tortious interference with business relations. (Dkt. No. 8.)

On July 12, 2010, Techsavies served it First Set of Interrogatories, Requests for Production ("RFP"), and Requests for Admission. (Lin Decl. Exs. 1-3.)[1] WDFA served its objections and

---

[1] Citations herein to "Lin Decl." refer to the Declaration of Richard C. Lin In Support of Plaintiff Techsavies, LLC's Motion for Sanctions.

1  responses to Techsavies' discovery requests on August 20, 2010.  (Lin Decl. Exs. 4-6.)  WDFA then
2  produced roughly 32,000 documents on August 26, 2010.  (Lin Decl. ¶ 8.)  On August 30, 2010,
3  WDFA's counsel wrote Techsavies stating: "... tomorrow morning, WDFA will produce
4  approximately 1,100 additional documents, after which we believe WDFA's document production will
5  be complete."  (Lin Decl. Ex. 7.)

6        Techsavies' RFPs called for the identification and production of all of WDFA's financial
7  information, including all documents related to any monies received from MetroPCS, sales, revenues,
8  profits, losses, discounts, costs of goods sold, operating expenses, operating profits/losses, and
9  incremental profits.  (Lin Decl. Ex. 2 at 5-6 (Techsavies' RFP Nos. 1, 2, 3, and 9); Ex. 1 at 5
10 (Techsavies' Interrogatory No. 2).)  Techsavies' RFP No. 12 asked for all communications with Mr.
11 Banerjee, the individual who prepared the copy of the source code for the Project632 website at
12 WDFA's direction.  (Lin Decl. Ex. 2 at 7.)  Techsavies' Interrogatories and Requests for Production
13 also sought all the facts and documents related to WDFA's counterclaims.  (Lin Decl. Ex. 1 at 5-6
14 (Techsavies' Interrogatory Nos. 4 and 5); Ex. 2 at 6 (Techsavies' RFP No. 9).)  Techsavies'
15 Interrogatory No. 2 sought WDFA's revenues and profits from the Project632 website on an end-user
16 basis.  (Lin Decl. Ex. 1 at 5.)  In response to Interrogatory No. 2, WDFA did not provide any specific
17 financial information and stated instead that it would rely on Rule 33(d) for its response, but WDFA
18 failed to identify any specific documents.  (Lin Decl. Ex. 4 (WDFA's Response to Techsavies' First
19 Set of Interrogatories) at 11-13.)

20       On September 2, 2010, Techsavies took the deposition of Mr. Banerjee.  Mr. Banerjee testified
21 that the first time he had ever had any communication with WDFA regarding the Project632 website
22 was in June 2009.  (Lin Decl. Ex. 8 (Banerjee Dep. Tr.) at 18:25-20:11, 21:8-23:6.)  Further, during the
23 Banerjee deposition, Techsavies specifically questioned the limited quantity of emails related to
24 Banerjee that had been produced, but Mr. Banerjee insisted that all his relevant emails had been
25 produced to Techsavies.  (*Id*. at 33:18-35:12.)

26       On October 19, 2010, an ENE session was held and the case did not settle.  (Dkt. No. 33.)
27       In light of the lack of production of any contracts between MetroPCS and WDFA, on October
28 29, 2010, Techsavies served a subpoena on MetroPCS seeking the same.  WDFA sought to stymie

1  Techsavies' discovery in this regard and the Court held a discovery conference on this issue on
2  November 5, 2010.  (Dkt. Nos. 32, 35, 37.)  In arguing to the Court why Techsavies should be
3  prohibited from obtaining third-party discovery from MetroPCS, WDFA's counsel represented that
4  "WDFA has produced all documents and financial information requested by Techsavies." (Dkt. No.
5  32 at 2.)

6        On November 1, 2010, Techsavies served its Second Set of Requests for Production.  (Lin
7  Decl. Ex. 9.)  Techsavies served these requests in order to obviate any allegation by WDFA that
8  WDFA did not know what documents Techsavies was seeking.  For example, WDFA contended that
9  contracts between WDFA and MetroPCS related to Project632 were not called for by Techsavies' First
10 Set of RFPs.  (Dkt. No. 32 at 2.) While that claim was in dispute, Techsavies served its Second Set of
11 RFPs to prevent WDFA from claiming otherwise.  When Techsavies later received the contracts, it
12 was apparent that the contracts included specific references to Project632 and were clearly called for
13 by the First Set of RFPs (see below).

14       On November 8, 2010, Techsavies wrote WDFA about the lack of production and candor of
15 WDFA's discovery responses.  (Lin Decl. Ex. 11.)  The lack of financial information and contracts
16 with MetroPCS is specifically mentioned in the correspondence.  (*Id.* at 1-2.)  On November 10, 2010,
17 Techsavies and WDFA conducted a meet and confer regarding WDFA's discovery failures.

18       On November 16, 2010, Techsavies took the deposition of WDFA's CEO and managing
19 partner, Raj Prasad.  During the deposition, Mr. Prasad repeatedly testified about the existence of
20 documents called for by Techsavies' First Set of RFPs that had not been produced.  For example, Mr.
21 Prasad testified about contracts between MetroPCS and WDFA related to Project632 that had not been
22 produced.  (Lin Decl. Ex. 12 (Prasad Dep. Tr.) at 121:6-124:25.)  Mr. Prasad also testified about co-
23 payments by MetroPCS for purchases through Project632.  (*Id.* at 129:22-131:22.)  Mr. Prasad testified
24 that the amount of these co-payments varies depending on the particular advertising campaign, but can
25 sometimes be a 100% matching contribution by MetroPCS.  (*Id.* at 130:4-131:22.)  Again, no
26 documents reflecting such payments had been produced at the time of Mr. Prasad's deposition,
27 including invoices from WDFA to MetroPCS for such monies.  These MetroPCS contracts and
28 invoices for MetroPCS co-payments would have been within the scope of Techsavies' RFP Nos. 1 and

2. (*See* Lin Decl. Ex. 2 at 5.)

On November 22, MetroPCS produced one contract between WDFA and MetroPCS, an April 1, 2009 Marketing Services Agreement. (Lin Decl. ¶ 12.) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Lin Decl. Ex. 10 at MPCS00013-14.)

On November 29, 2010 – two days before the close of fact discovery – Techsavies received from WDFA two separate productions of documents that included a total of over 87,000 documents. (Lin Decl. ¶ 15.) Among the documents in these two productions were roughly 5,600 emails to/from Mr. Banerjee related to Project632. (*Id.* at ¶ 16.) In addition, numerous previously unproduced documents related to financial information were produced, such as WDFA invoices to MetroPCS and invoices to dealers for purchases through the Project632 website. (*Id.* at ¶ 17.) In addition, the November 29 production included two WDFA contracts with MetroPCS, but based on its review of these contracts, it was clear to Techsavies that other WDFA contracts with MetroPCS existed but had yet to be produced. Techsavies immediately requested these missing contracts from WDFA. (Lin Decl. Ex. 13.)

On December 1, 2010, pursuant to the Scheduling Order, fact discovery in this case closed. (Dkt. No. 31.)

On December 3, 2010, WDFA produced two more contracts between MetroPCS and WDFA. (Lin Decl. Ex. 14.) In addition, WDFA indicated that yet more documents from WDFA partners Raj Prasad, Jason Hilton, and another WDFA employee would be produced later. (*Id.*)

On December 9, 2010, the parties held a meet and confer regarding WDFA's production. At the meet and confer, WDFA indicated that approximately 100,000 more documents responsive to Techsavies' First Set of RFPs would be produced the next day. Techsavies sought an unconditional three-week extension of its discovery period so that it could review the materials and then decide how to proceed. WDFA refused. In addition, Techsavies sought production of the HTML version of the WDFA version of the code to facilitate comparison. WDFA refused. Later that same day, Techsavies submitted a letter to the Court about the matter. (Dkt. No. 39.)

1   On December 10, 2010, WDFA produced approximately 120,000 additional documents. (Lin
2 Decl. ¶ 20 and Ex. 15.) Among the documents were roughly 750 more emails from/to Mr. Banerjee
3 related to Project632. (Lin Decl. ¶ 21.) Among these were emails ███████████████
4 ████████████████████████████████████████ (Lin Decl. Ex. 16
5 (WDFA000382345); Ex. 17 (WDFA000377006); Ex. 18 (WDFA000368852).)
6   On December 13, 2010, WDFA wrote the Court stating that it had produced "some electronic"
7 documents after the close of discovery. (Dkt. No. 41.)
8   On Friday, December 17, 2010, the Court held a discovery conference. (Dkt. No. 43.) Once
9 apprised of the facts, the Court indicated that Techsavies could either proceed by filing a motion for
10 sanctions or could seek the three-week extension of discovery. The Court ordered Techsavies to make
11 its election by Monday, December 20, 2010. (*Id.*) Under the case schedule at the time, however,
12 opening expert reports were due at the end of the day on December 17, 2010. (Dkt. No. 31.) The
13 Court therefore held that, in the event that Techsavies elected to proceed by motion, the deadline for
14 opening expert reports would be extended to Monday, December 20, 2010. During the discovery
15 conference, Techsavies stated that it was prepared to proceed with WDFA's total revenues as the base
16 for its copyright infringement claim. Later in the day on December 17, 2010, WDFA served a
17 "supplemental" response to Techsavies' Interrogatory No. 2, to which WDFA had previously provided
18 no substantive response. The supplemental response consisted of a spreadsheet purporting to disclose
19 revenue, cost, and profit information for sales through the Project632 website. WDFA, however,
20 described the spreadsheet as "incomplete." (Lin Decl. Ex. 19). In addition, WDFA informed
21 Techsavies that it was making yet more documents responsive to Techsavies' RFPs available for
22 inspection. (*Id.*) These documents turned out to include invoices for Project632 sales from 2007
23 called for by Techsavies' RFP No. 1 served on July 12, but had never before been produced. (*Id.*)
24   On Monday, December 20, 2010, Techsavies made its election to proceed by motion and
25 notified the Court. (Dkt. No. 44.) Also on that same day, Techsavies served it opening expert report.
26 WDFA also served a report related to its counterclaims from its expert, Ms. Ip. The Ip report relied
27 upon documents called for but not produced during the discovery period (*e.g.*, customer complaints
28 about Project632). (Lin Decl. ¶ 27; Ex. 21 (WDFA000347553).) Because the Ip report did not cite the

**HOWREY LLP**

Case No. CV-10-1213-BZ
PLAINTIFF TECHSAVIES, LLC'S NOTICE OF MOTION
AND MOTION FOR SANCTIONS

-6-

Bates numbers for any of the documents referenced, Techsavies asked WDFA to identify those Bates numbers. (Lin Decl. Ex. 22.) WDFA refused. (Lin Decl. Ex. 23.)

### III.  ARGUMENT

As detailed above, WDFA's failure to comply with its discovery obligations is profound. As discussed above, fully 50% of all the documents produced by WDFA were actually produced AFTER the close of discovery and another 35% of the documents were produced just two days before the close of discovery. There has obviously been an astounding discovery failure in any case in which a party produces 85% of all its documents either after or within two days of the close of discovery.

The situation is not a mistake. Instead, WDFA has chosen to engage in a pattern of obstructing discovery and failing/refusing to produce the called for materials. WDFA began the case with an initial refusal to admit obvious facts such as that Techsavies' personnel were not WDFA's employees, clearly inadequate document production, and efforts to thwart Techsavies' discovery from third-party MetroPCS. Indeed, it was only after Techsavies began to obtain documents from MetroPCS that WDFA began producing copies of its contracts with MetroPCS. All this activity culminated in vast quantities of documents being produced and information disclosed AFTER the close of discovery, only when it seemed to be in WDFA's interests to do so.[2]

**A.  A Sanction Deeming Minimum Revenue Established And No Offsets Or Deductions Is Warranted To Address The Prejudice Techsavies Has Suffered**

As detailed above, throughout this case, Techsavies has sought to determine the basis for a case involving claims of breach of contract and copyright infringement: namely WDFA's gross revenues as well as the basis for any claims of offsets or deductions from the revenues. Techsavies' First Set of RFPs sought all the documents associated with this and Techsavies also sought this information by Interrogatory.

On June 12, 2010, Techsavies asked WDFA to identify every "End User" of the Project632 website, and for each End User "provide on a monthly basis all revenue received from each End User

---

[2] Frankly, in light of the statutory burdens of proof in copyright cases related to damages, it has always been in WDFA's interests to be forthcoming with its financial information.

1  for the Project 632 website, and [WDFA's] gross and net profits derived from said revenue." (Lin
2  Decl. Ex. 1 at 5.) WDFA purported to respond to the portions of this Interrogatory asking for the
3  identification of the End Users of the Project632 website and the revenue received from each End User
4  by referencing Rule 33(d) of the Federal Rules of Civil Procedure. (Lin Decl. Ex. 4 at 11-12.) Rule
5  33(d) provides that if an answer to an interrogatory may be determined by analyzing a party's business
6  records, and if the burden of deriving the answer will be substantially the same for either party, then
7  the responding party may answer the interrogatory by specifying the records that must be reviewed in
8  sufficient detail to enable the reviewing party to locate and identify them as readily as the reviewing
9  party.[3] *See* FED. R. CIV. P. 33(d). A proper interrogatory response pursuant to Rule 33(d) requires that
10 a party specifically identify the responsive documents, as opposed to simply providing a generic
11 description. *See Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 307 (E.D. Pa. 1996); *SEC v. Elfindepan,*
12 *S.A.*, 206 F.R.D. 574, 576 (M.D.N.C. 2002). WDFA, however, did not identify any specific
13 documents, but rather only referenced generic categories of documents, such as "invoices submitted to
14 WDFA's metroPCS customers." (Lin Decl. Ex. 4 at 12.) And in regard to the portion of the
15 Interrogatory asking for WDFA's gross and net profits, WDFA simply responded that it has not earned
16 a profit during the period that it has operated the Project632 website. (*Id.* at 12.)

17      Techsavies wrote WDFA about the deficient response to Interrogatory No. 2, including
18 WDFA's failure to identify any documents despite its alleged reliance on Rule 33(d) in its response.
19 (Lin Decl. Ex. 11.)

20      Because of WDFA's deficient interrogatory response and failure to supplement that response,
21 Techsavies was forced to undertake a detailed review of all of the documents produced by WDFA in
22 an attempt to locate all of the relevant invoices to identify each End User and determine the revenue
23 that WDFA received from each End User. Techsavies also had to undertake an analysis of WDFA's
24 documents in an attempt to determine WDFA's gross and net profits derived from the Project632
25 website. But these proved to be impossible tasks given WDFA's incomplete production, as discussed

---

27      [3] WDFA also objected to this Interrogatory as consisting of multiple subparts. While Techsavies disputes whether that is the case, even under WDFA's count, Techsavies only served 24
28 Interrogatories, so WDFA cannot justify its failure to answer the Interrogatory on that basis.

**HOWREY LLP**

Case No. CV-10-1213-BZ                    -8-
PLAINTIFF TECHSAVIES, LLC'S NOTICE OF MOTION
AND MOTION FOR SANCTIONS

1  above. For example, WDFA failed to produce all of the invoices related to revenue received from End
2  Users of the Project632 website, and thus Techsavies was unable to identify all of the End Users or the
3  revenue received from those End Users. And WDFA's failure to produce those documents necessarily
4  made it impossible for Techsavies to calculate the gross and net revenues derived through the
5  Project632 website. Thus, Techsavies was deprived of this information throughout the entire
6  discovery period, including during the deposition of WDFA's Chief Financial Officer.

7  Sixteen days after the close of fact discovery, and on the date scheduled for the submission of
8  opening expert reports, WDFA served a supplemental response to Interrogatory No. 2. (Lin Decl. Ex.
9  24.) In that supplemental response, WDFA submitted spreadsheets that purportedly list WDFA's gross
10 and net profits for the Project632 website on a monthly basis from March of 2008 through October of
11 2010. (*Id.*) The spreadsheets also include listings on a month-by-month basis of the revenue received
12 from each End User of the Project632 website for the same time period. (*Id.*) WDFA made no attempt
13 to identify documents from which the information was derived pursuant to Rule 33(d), but rather just
14 provided the summary information. Thus, WDFA referenced Rule 33(d) in its initial response to
15 Interrogatory No. 2 not as a means to provide responsive information, but rather to delay providing an
16 answer to that interrogatory for almost four months. And by doing so, WDFA deprived Techsavies of
17 the ability to take any fact discovery regarding the information in that response and left Techsavies
18 with virtually no time to analyze or assess the accuracy of that information before opening expert
19 reports were due.

20 Moreover, the information provided in the supplemental response was still incomplete. For
21 example, the Project632 website was launched in September of 2007, yet the information in WDFA's
22 supplemental response only goes back to March of 2008. Even WDFA's own counsel admitted that
23 "we can see that the information is incomplete, and that the format does not correspond exactly to the
24 categories of information requested in the interrogatory." (Lin Decl. Ex. 19.) Thus, WDFA still has
25 not provided a complete response to Interrogatory No. 2, and thereby prejudiced Techsavies.

26 In the face of Techsavies' numerous requests, WDFA continually failed and refused to produce
27 its financial information. Techsavies sought the MetroPCS contracts but did not get a complete set of
28 the contracts from WDFA until two days after the close of fact discovery. In addition, Techsavies did

not get information on the revenues that flowed directly through Project632 for certain months in 2007 until after the close of discovery.

At this late date, Techsavies still cannot determine the amount of revenues that can be directly attributed to WDFA's use of the infringing version of the Project632 code. This is so because, at a minimum, WDFA has failed to produce complete information regarding admitted co-payments by MetroPCS. For example, Techsavies and its damages expert have been unable to identify ███ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ (Lin Decl. Ex. 25 at ¶¶ 15-16.) Likewise, Techsavies has no way to verify any offsets or deductions because, again, WDFA has not produced them. In light of WDFA's discovery misconduct, the revenues directly attributable to Project632 are unknown as are any offsets or deductions.

Accordingly, pursuant to Federal Rule of Civil Procedure 37(c)/(b)(1)/(2), the minimum revenue attributable to Project632 should be deemed established as twice the revenue that was charged through the website. This approach is warranted because WDFA's discovery failures have precluded Techsavies from obtaining accurate information on the revenues and questioning WDFA's witnesses about them. Twice the revenue is consistent with Mr. Prasad's testimony of co-payments by MetroPCS of as much as 100% (*i.e.*, a matching contribution) but is less than the evidence showing higher percentage payments. Moreover, deeming the revenues as a minimum of twice the revenue charged through the website will avoid the need to put on proofs of the minimum revenue which would be hampered by WDFA's discovery failures. Thus, for the purposes of this case, the revenue attributable to Project632 will be somewhere between WDFA's company-wide revenues and twice the revenue charged through the website.[4]

In addition, WDFA should be barred from offering evidence of deductions or offsets from the revenue numbers. WDFA's discovery failures have precluded Techsavies from taking discovery of alleged offsets or deductions and, despite Techsavies' requests, WDFA has yet to produce actual

---

[4] While Techsavies seeks to have such a fact established as a result of discovery misconduct, this approach is consistent with the burdens established by 17 U.S.C. § 504(b) wherein the copyright plaintiff need only prove gross revenues.

1  evidence of them other than spreadsheets created solely for this litigation, which were produced after
2  the close of discovery, and without any underlying documentation.  Having not produced information
3  of offsets or deductions during the discovery period, WDFA should be barred from offering them at
4  trial.

### B.   WDFA Should Be Barred From Offering Or Relying On Any Of The Late Produced Materials

Federal Rule of Civil Procedure 37(c)(1) provides for the imposition of sanctions when a party fails to disclose information sought or to supplement a prior discovery response that is incomplete. The Rule provides that the remedy for such conduct is that the "party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless."  The Rule further provides that a court may also impose monetary sanctions, may inform the jury of the party's failure, and may impose other appropriate sanctions, such as those enumerated in Rule 37(b)(2). *See Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("This particular subsection, implemented in the 1993 amendments to the Rules, is a recognized broadening of the sanctioning power."); *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998) ("The new rule clearly contemplates stricter adherence to the discovery requirements, and harsher sanctions for breaches of this rule . . ."). As the Advisory Committee Notes acknowledge, Rule 37(c) is meant to be self-executing and an automatic sanction in order to induce full disclosure from parties. FED. R. CIV. P. 37 Advisory Committee Notes (1993).  Thus, sanctions are warranted under Rule 37(c)(1) for a failure to disclose information, even without a violation of a specific discovery order and without a showing of bad faith or willfulness. *Yeti*, 259 F.3d at 1106. As the party who failed to produce, WDFA bears the burden of showing that the failure to produce was substantially justified or harmless. *Id.* at 1107.

WDFA's production can be divided into two groups:  (1) the materials actually produced after the close of discovery; and (2) the materials produced two days before the close of discovery.  In both cases, there is no substantial justification for WDFA's failure to timely produce the materials and the non-production was not harmless.

### 1. Materials Produced After The Close Of Discovery

With respect to the materials actually produced after the close of discovery, they are divided into two groups: (a) all other materials; and (b) the 120,000 document production of December 10, 2010.

#### a. All Other Materials

As detailed above, since the close of discovery, WDFA has produced: (1) a supplemental response to Techsavies' Interrogatory No. 2 (attempting to disclose financial information); (2) invoices from 2007; and (3) materials relied upon by WDFA's expert.

With respect to these materials, their non-disclosure was not substantially justified or harmless. For example, in July, Techsavies asked WDFA for information related to WDFA finances so that Techsavies could compute and understand its damages and respond to any claims for deductions from WDFA's revenues. Techsavies sought this information by both RFPs and Interrogatory. All of this information was in WDFA's possession. Yet WDFA did not produce it. Indeed, it was not until after discovery ended that WDFA produced any invoices for several months in the year 2007. Moreover, it was not until after Techsavies stated its intention to rely on WDFA's total company revenues and more than two weeks after the close of discovery that WDFA attempted to supplement its response to Interrogatory No. 2. There is no justification for such conduct. Further, WDFA's failure to produce the materials or make the disclosures was not harmless. Their late production has precluded Techsavies from taking discovery of them, questioning WDFA's witnesses about them, or even attempting to find out where the still unproduced underlying documents are. If allowed to rely upon such late produced materials, Techsavies will learn of their bases for the first time at trial when WDFA's expert relies on them to try and reduce Techsavies' damages in this case.

#### b. The December 10 Production

With respect to the 120,000 documents produced on December 10, WDFA admits that these materials were called for by Techsavies' RFPs served in July. To date, WDFA has offered that these materials were not produced due to a "vendor error."

While Techsavies does not know the alleged details of WDFA's "vendor error," WDFA must have known that its production was wildly incomplete. Techsavies' First RFPs called for all

1  communications to/from Mr. Banerjee and, in August, WDFA represented to Techsavies that its
2  production was complete.  During the first deposition in this case of Mr. Banerjee, Techsavies
3  questioned Mr. Banerjee on the astounding lack of email to/from him produced at that time.  (Lin Decl.
4  Ex. 8 (Banerjee Dep. Tr.) at 33:19-35:12.)  Since that deposition, WDFA has produced nearly 6,500
5  additional Banerjee emails, including documents that contradict Mr. Banerjee's testimony as to when
6  the copying began.  (Lin Decl. ¶ 16.)  It goes without saying that Techsavies' inability to depose Mr.
7  Banerjee with documents – including ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
8  ▓▓▓▓▓▓▓▓ – was not harmless.  (Lin Decl. Ex. 17.)

9        Likewise, Techsavies' First Set of RFPs and Interrogatories served in July called for contracts
10  between MetroPCS and WDFA.  (Lin Decl. Ex. 2 at 5-6 (RFP Nos. 2 and 10).)  Again, these materials
11  were not produced even through the date of Mr. Prasad's deposition on November 16.  The continuous
12  non-production leads Techsavies to conclude that either the materials were willfully withheld[5] or that
13  WDFA's discovery failures would have been obvious had WDFA decided to investigate the matter.
14  Again, WDFA's failure was not harmless as Techsavies was prevented from questioning, at least, Mr.
15  Prasad about the contracts.

16        WDFA cannot maintain that it had no idea that its production was incomplete when Techsavies
17  was continuously telling WDFA that its production was incomplete and even a passing review would
18  have revealed the same.

19        **2.**    **Materials Produced Two Days Before The Close Of Discovery**

20        As detailed above, two days before the close of discovery, WDFA produced more than 87,000
21  pages of materials and also made available more than 9,000 pages for inspection.  These materials
22  included:
23        (a)    a mass of previously unproduced financial materials (*e.g.*, invoices from WDFA to
24  MetroPCS – called for by RFP Nos. 2 and 3);
25        (b)    WDFA contracts with MetroPCS (called for by RFP Nos. 2 and 10); and

---

27      [5]  As noted above, on November 10, 2010, Techsavies was forced to conduct a meet and confer
28  on WDFA's discovery failures.

Case No. CV-10-1213-BZ       -13-
PLAINTIFF TECHSAVIES, LLC'S NOTICE OF MOTION
AND MOTION FOR SANCTIONS

**HOWREY LLP**

(c) More than 5,600 emails to/from Mr. Banerjee (called for by RFP Nos. 10 and 12).

Again, there is no substantial justification for WDFA's failure to timely produce these materials in response to the RFPs that Techsavies served in July. In addition, WDFA's failure was not harmless. Techsavies was prevented from questioning Prasad, Banerjee, or Hilton about these materials or pursuing further discovery in light of the information contained within the documents.

Pursuant to Federal Rules of Civil Procedure 26(e) and 37(c), parties are under a duty to seasonably supplement previous disclosures. The full range of relief under Rules 37(c) and 37(b) is available when a party fails to supplement an earlier disclosure or to make the disclosure in the first place. That WDFA produced these materials two days before the close of discovery rather than actually after the close of discovery is of little import when Techsavies was prevented from taking discovery related to them or questioning WDFA witnesses regarding them. Accordingly, again, WDFA should be prevented from offering or relying on these late produced materials.

## IV. CONCLUSION

Techsavies has been extremely prejudiced in its ability to take discovery in this case, formulate its case strategy, determine the extent of the financial harm it has suffered, and prepare expert reports regarding that harm. The remedies sought herein are necessary to alleviate that harm and are warranted in light of WDFA's willful failure to comply with its discovery obligations. Thus, Techsavies respectfully requests that its motion for sanctions be granted in full.

Dated: January 12, 2011                                    HOWREY LLP


By:   */s/ James C. Pistorino*
      Daniel T. Shvodian (SBN 184576)
      James C. Pistorino (SBN 226496)
      Richard C. Lin (SBN 209233)
      HOWREY LLP
      1950 University Avenue, 4th Floor
      East Palo Alto, CA  94303
      Telephone:  (650) 798-3500
      Facsimile:   (650) 798-3600
      Email: *shvodiand@howrey.com*
      Email: *pistorinoj@howrey.com*
      Email: *linrichard@howrey.com*

      Attorneys for Plaintiff
      TECHSAVIES, LLC

23595431

Case No. CV-10-1213-BZ
PLAINTIFF TECHSAVIES, LLC'S NOTICE OF MOTION
AND MOTION FOR SANCTIONS

-14-