Daniel T. Shvodian (SBN 184576)
James C. Pistorino (SBN 226496)
Richard C. Lin (SBN 209233)
HOWREY LLP
1950 University Avenue, 4th Floor
East Palo Alto, CA 94303
Telephone: (650) 798-3500
Facsimile: (650) 798-3600
Email: *shvodiand@howrey.com*
Email: *pistorinoj@howrey.com*
Email: *linrichard@howrey.com*

Attorneys for Plaintiff TECHSAVIES, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TECHSAVIES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>WDFA MARKETING, INC.,<br><br>Defendant. | Case No. CV-10-1213 BZ<br><br>**PLAINTIFF TECHSAVIES, LLC'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR SUMMARY JUDGMENT ON DEFENDANT WDFA MARKETING, INC.'S AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**<br><br>Date: March 16, 2011<br>Time: 10:00 a.m.<br>Courtroom: G, 15th Floor<br>Judge: Hon. Bernard Zimmerman |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND .................................................................................................3

    A. Techsavies and WDFA's Partnership Agreement ...........................................................3

    B. Development of the Collateralizer Software ..................................................................3

    C. WDFA's Subsequent Replacement of the Collateralizer Software ................................4

    D. Techsavies' Complaint and WDFA's Answer ................................................................4

III. ARGUMENT ...........................................................................................................................5

    A. Legal Standard ................................................................................................................5

    B. WDFA Has No Basis for Asserting a Copyright Misuse Defense ..................................6

    C. WDFA Has No Basis for Asserting Waiver and Estoppel Defenses ..............................6

    D. WDFA Cannot Establish Joint Authorship in the Collateralizer Software as a Matter of Law ...............................................................................................................7

    E. WDFA's Breach of Contract Counterclaim Fails as a Matter of Law Because WDFA Has Not Identified any Enforceable Term of any Contract that Techsavies Breached ..................................................................................................8

    F. WDFA Cannot Succeed on Its Fraud Counterclaim Because It Has Failed to Show any Misrepresentation by Techsavies that Was Relied Upon by WDFA ............................................................................................................................11

    G. WDFA Cannot Establish an Interference with Business Relations Counterclaim ...............................................................................................................12

IV. CONCLUSION .....................................................................................................................14

HOWREY LLP

Case No. CV-10-1213-BZ  
TECHSAVIES' NOTICE OF MOT. AND MOT. FOR JUDGMENT  
ON THE PLEADINGS AND/OR SUMM. JUDGMENT  
DM_US:23617866_2

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Altera Corp. v. Clear Logic, Inc.*,
   424 F.3d 1079 (9th Cir. 2005) .................................................................................. 6

*Ashton-Tate Corp. v. Ross*,
   916 F. 2d 516 (9th Cir. 1990) .................................................................................... 8

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*,
   52 Cal. App. 4th 867 (Cal. App. 4th Dist. 1997) ..................................................... 14

*Bingue v. Prunchak*,
   512 F.3d 1169 (9th Cir. 2008) .................................................................................. 5

*Celotex v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................. 6

*Community for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) ................................................................................................. 8

*Driscoll v. City of Los Angeles*,
   67 Cal. 2d 297 (1967) .............................................................................................. 7

*Fajardo v. County of Los Angeles*,
   179 F.3d 698 (9th Cir. 1999) ......................................................................... 5, 12, 13

*Mellencamp v. Riva Music Ltd.*,
   698 F. Supp. 1154 (S.D.N.Y. 1988) ....................................................................... 10

*Nagy v. Nagy*,
   210 Cal. App. 3d 1262, 1268 (1989) ...................................................................... 12

*Outboard Marine Corp. v. Superior Court of Sacramento County*,
   52 Cal. App. 3d 30 (1975) ........................................................................................ 7

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
   50 Cal. 3d 1118 (1990) ........................................................................................... 13

*Penna v. Toyota Motor Sales, U.S.A., Inc.*,
   11 Cal. 4th 376 (1995) ............................................................................................ 13

*Smolen v. Deloitte, Haskins & Sells*,
   921 F.2d 959 (9th Cir. 1990) .................................................................................... 6

*SOS, Inc. v. Payday, Inc.*,
   886 F. 2d 1081 (9th Cir. 1989) ................................................................................. 7

*Taylor v. List*,
   880 F.2d 1040 (9th Cir. 1989) .................................................................................. 6

*Valente-Kritzer Video v. Pinckney*,
   881 F.2d 772 (9th Cir. 1989) .................................................................................. 10

HOWREY LLP

Case No. CV-10-1213-BZ
TECHSAVIES' NOTICE OF MOT. AND MOT. FOR JUDGMENT
ON THE PLEADINGS AND/OR SUMM. JUDGMENT
DM_US:23617866_2

-ii-

*Whelan Assocs. v. Jaslow Dental Laboratory*,
   609 F. Supp. 1307 (E.D. Pa. 1985) ........................................................................................ 8

**STATUTES**

17 U.S.C. § 204(a) ........................................................................................................................ 10

Fed. R. Civ. P. 12(c). ........................................................................................................ 2, 5, 6, 12

Fed. R. Civ. P. 56(c) ........................................................................................................................ 5

**HOWREY LLP**

Case No. CV-10-1213-BZ
TECHSAVIES' NOTICE OF MOT. AND MOT. FOR JUDGMENT
ON THE PLEADINGS AND/OR SUMM. JUDGMENT
DM_US:23617866_2

-iii-

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on March 16, 2011, at 10:00 a.m., in Courtroom G of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California, Plaintiff Techsavies, LLC ("Techsavies") will and hereby does move the Court for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and/or summary judgment under Federal Rule of Civil Procedure 56 against Defendant WDFA Marketing, Inc. ("WDFA") on WDFA's affirmative defenses of 1) copyright misuse, 2) waiver/estoppel, and 3) joint work, as well as on WDFA's counterclaims of 1) breach of contract, 2) fraud, and 3) interference with business relations.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the accompanying declaration of Richard C. Lin and exhibits attached thereto, all pleadings and papers on file in this action, oral argument as permitted by the Court, and such other evidence or argument as may be presented to the Court before, at, or following the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Techsavies has asserted a claim of copyright infringement against WDFA due to WDFA's unauthorized use of a work that infringes Techsavies' copyright on its "Collateralizer" software. Techsavies has also asserted breach of partnership/contract claims against WDFA based on WDFA's failure to abide by the terms of an October 2006 agreement in which the parties agreed to collaborate in the development and marketing of the software and to split the revenues derived from the software.

In response to these claims, WDFA has raised numerous affirmative defenses and counterclaims, including defenses of 1) copyright misuse, 2) waiver/estoppel, and 3) joint work, as well as counterclaims of 1) breach of contract, 2) fraud, and 3) interference with business relations. Each of these defenses and counterclaims is critically flawed, however – either legally, factually, or both.

First, WDFA erroneously raises copyright misuse as a defense to Techsavies' breach of contract claim, rather than as a defense to copyright infringement. Under Ninth Circuit law, copyright

HOWREY LLP

Case No. CV-10-1213-BZ
TECHSAVIES' NOTICE OF MOT. AND MOT. FOR JUDGMENT
ON THE PLEADINGS AND/OR SUMM. JUDGMENT
DM_US:23617866_2

misuse is not a proper defense to a breach of contract claim.  Thus, WDFA has improperly pleaded a copyright misuse defense, and that defense should be dismissed from this action under Fed. R. Civ. P. 12(c).

WDFA has also raised a generalized allegation that Techsavies' claims are barred under the doctrine of waiver and/or estoppel.  But WDFA fails to articulate any basis for these defenses, and there is no evidence that Techsavies ever made any statement or took any action to suggest that it was waiving or surrendering any rights with respect to the claims set forth in its Complaint.  Techsavies is therefore entitled to judgment on the pleadings and/or summary judgment on these defenses.

Equally meritless is WDFA's assertion that it cannot be liable for copyright infringement because it is a joint author of the Collateralizer software.  It is undisputed that Techsavies owns the copyright to the software.  It is furthermore undisputed that WDFA cannot identify a single line of source code in the Collateralizer software that anyone at WDFA contributed.  Because WDFA cannot show that it wrote any actual source code for the Collateralizer software, summary judgment should be granted in Techsavies' favor on WDFA's joint work defense.

WDFA's breach of contract counterclaim also lacks any merit.  This counterclaim is based on an alleged breach of an oral promise by Techsavies to assign copyrights to the Collateralizer software to WDFA.  But it is well-established under the Statute of Frauds provision of the Copyright Act that oral agreements to assign copyrights are unenforceable.  WDFA is therefore barred from pursuing its breach of contract counterclaim against Techsavies.

As for WDFA's counterclaim of fraud, WDFA cannot succeed on this counterclaim as it has failed to identify any specific misrepresentation on the part of Techsavies.  WDFA's fraud counterclaim appears to be premised on WDFA's belief that it paid too much for Techsavies' services.  But WDFA's generalized complaint regarding the quality of Techsavies' work does not give rise to a claim of fraud.

Finally, WDFA's "interference with business relations" counterclaim is meritless.  Although WDFA alleges that Techsavies refused to hand over data stored on its servers regarding MetroPCS's franchisees, and that this refusal harmed WDFA's contractual relationship with MetroPCS, WDFA fails to identify any contract with MetroPCS that was breached or disrupted as a result of Techsavies'

actions.  WDFA therefore cannot establish critical elements necessary for an intentional interference with contractual relations claim.

In sum, each of these affirmative defenses and counterclaims raised by WDFA is critically flawed in some respect such that it is impossible for WDFA to succeed on these defenses and counterclaims at trial.  Consequently, summary judgment on these WDFA defenses and counterclaims is proper.

## II.   FACTUAL BACKGROUND

### A.   Techsavies and WDFA's Partnership Agreement

Techsavies is a company that provides information technology services to businesses.  (UF No. 1.)[1]  The company is co-owned by Bob Conner and Marouan Hajjoubi.  (*Id.*)  WDFA is an advertising agency founded in 2006 by Raj Prasad.  (UF No. 2.)  Around October 2006, Techsavies and WDFA began working together on a project to develop software for selling advertising materials to MetroPCS franchisees.  The software was to be used to operate a website at the URL http://www.project632.com (the "Project632 website").  (UF No. 21.)

### B.   Development of the Collateralizer Software

After the initial meeting between Techsavies and WDFA in October 2006, Techsavies began working on developing the software for the Project632 website.  Hajjoubi performed the system analysis and project management for the software, which was later named "the Collateralizer."  (UF No. 22.)  Techsavies engaged a company called Ace Website Design ("Ace") to write source code for the software to operate the Project632 website.  (UF No. 3.)  Ace subsequently assigned all of its intellectual property rights in the software developed for the Project632 website to Techsavies.  (UF No. 4.)

The source code for the Collateralizer software was maintained at all times on a server controlled by Techsavies, and Techsavies never gave WDFA a copy of or access to the source code.  (UF No. 23.)  Prasad agreed that Techsavies would retain control over the source code for the software

---

[1] References herein to "UF" refer to Techsavies' Separate Statement of Undisputed Facts in Support of Its Summary Judgment Motions.

1  to address its concern that it did not want WDFA employees making any changes to the code. (UF No.
2  5; Lin Decl.,[2] Ex. 5 (Prasad Dep. Tr.), at 73:15-74:9.)

3      Over the course of almost a year, Techsavies worked with WDFA to develop the software for
4  Project632. WDFA communicated to Techsavies the way it wanted the user interfaces and screens for
5  the Project632 website to look by providing Techsavies with Photoshop images of its design ideas.
6  (UF No. 6.) No one at WDFA, however, ever wrote any source code for the development of the
7  Project632 website. (UF Nos. 24, 25; Lin Decl., Ex. 5 (Prasad Dep. Tr.), at 81:3-20, 87:11-23, 106:13-
8  107:13, 265:11-13.)

9      By the fall of 2007, Techsavies had completed the Collateralizer software, and in September
10 2007 the Project632 website "went live." (UF No. 8.) Immediately thereafter, WDFA began selling
11 advertising materials to MetroPCS franchisees through the website. (*Id.*)

12     **C.**     **WDFA's Subsequent Replacement of the Collateralizer Software**

13     In 2009, Prasad contacted another software developer, Abhishek Banerjee, to build a website
14 that was "as close to Project632 as possible." (UF No. 9.) Banerjee in turn hired a company called
15 Skylark Solutions ("Skylark") in India to perform the work requested by Prasad. (UF No. 10.) By
16 November 2009, Banerjee's team had completed the development of replacement software to operate
17 the Project632 website. On or about November 23, 2009, WDFA stopped using the Collateralizer
18 software and re-directed the URL http://www.project632.com to a server hosted by WDFA and
19 running the replacement software. (UF Nos. 16, 17.) WDFA thereafter informed Techsavies that it
20 would no longer need Techsavies' services for the Project632 website. Since November 2009, WDFA
21 has been using the replacement software created by Banerjee's team to continue selling advertising
22 materials to MetroPCS franchisees through the Project632 website. (UF No. 18.)

23     **D.**     **Techsavies' Complaint and WDFA's Answer**

24     Techsavies' Complaint in this action alleges that WDFA has infringed its copyrights to the
25 Collateralizer software by copying substantial portions of the Collateralizer source code to develop the

---

27 [2] References herein to "Lin Decl." refer to the February 9, 2011 Declaration of Richard C. Lin filed in support of Techsavies' motions for summary judgment and judgment on the pleadings.
28

replacement software for the Project632 website. (Lin Decl., Ex. 13 (Complaint, Dkt. # 1), at 3:3-8, 4:3-5:11). Techsavies also alleges that WDFA breached the parties' October 2006 agreement with Techsavies by failing to pay Techsavies its fair share of the revenue from the Project632 website. (*Id.* at 2:10-3:2, 5:14-6:8, 6:23-7:6.) In response to these allegations, WDFA filed on May 13, 2010 an Answer and Counterclaim ("Answer") that raises various affirmative defenses and counterclaims. (*See* Lin Decl., Ex. 6 (Answer, Dkt. # 8.) The affirmative defenses and counterclaims at issue in the present motion are WDFA's affirmative defenses of 1) copyright misuse, 2) joint work, and 3) waiver/estoppel, as well as on WDFA's counterclaims of 1) breach of contract, 2) fraud, and 3) interference with business relations.[3] (*See id.* at 7:7-24, 8:1-5, 13:5-15:5.)

## III.   ARGUMENT

### A.   Legal Standard

Judgment on the pleadings under Fed. R. Civ. P. 12(c) is appropriate "when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999). When matters outside the pleadings are presented, a motion for judgment on the pleadings is treated as a motion for summary judgment. *Bingue v. Prunchak*, 512 F.3d 1169, 1172 n.4 (9th Cir. 2008).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On summary judgment, the moving party "bears the initial responsibility for informing the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). The non-movant must then present some evidence establishing each element of its claims on which it would bear the burden of proof at trial. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted). Conclusory allegations

---

[3] During the parties' meet and confer regarding Techsavies' motions for summary judgment, WDFA agreed to withdraw its previously-asserted affirmative defenses of 1) independent creation and 2) fair use. (Lin Decl., Ex. 14 (2/7/11 Sharp Email to Lin).) Based on WDFA's representation, Techsavies does not address those defenses in the present motion.

unsupported by factual data are insufficient to defeat a summary judgment motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### B.  WDFA Has No Basis for Asserting a Copyright Misuse Defense

WDFA's copyright misuse defense is critically flawed as a matter of law.  The entirety of WDFA's copyright misuse allegation is a single sentence in its Answer asserting that "the Complaint for breach of contract is barred, in whole or in part, by the doctrine of copyright misuse."  (Lin Decl., Ex. 6 (Answer, Dkt. # 8), at 8:3-5.)  Under Ninth Circuit law, however, copyright misuse does not constitute a defense to a breach of contract claim.  *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005).  Rather, the Ninth Circuit has held that copyright misuse can be raised only as a defense to a copyright infringement claim.  *Id.*  Thus, even assuming that all of the allegations in WDFA's Answer were true, WDFA cannot rely on the copyright misuse doctrine as a defense to Techsavies' breach of contract claim.  This defense should therefore be dismissed under Fed. R. Civ. P. 12(c).

### C.  WDFA Has No Basis for Asserting Waiver and Estoppel Defenses

In its Answer, WDFA has raised the affirmative defenses of waiver and estoppel.  WDFA, however, fails to articulate any factual or legal basis for these defenses.  Rather, the entirety of WDFA's allegations on these defenses is as follows:

> Solely by way of an affirmative defense, not to be construed as an admission, the Complaint is barred, in whole or in part, by the doctrine of waiver.

> Solely by way of an affirmative defense, not to be construed as an admission, the Complaint is barred, in whole or in part, by the doctrine of estoppel.

(Lin Decl., Ex. 6 (Answer, Dkt. # 8), at 7:17-24.)

Waiver requires: (1) an existing right, benefit, or advantage; (2) a knowledge, actual or constructive, of its existence; and (3) an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished. *Outboard Marine Corp. v. Superior Court of Sacramento County*, 52 Cal. App. 3d 30, 41 (1975). Estoppel requires a showing that: (1) the party to be estopped is apprised of the facts; (2) that party intends that its conduct shall be acted upon, or must so act that the party asserting estoppel had a right

to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) the other party must rely upon the conduct to its injury." *Driscoll v. City of Los Angeles*, 67 Cal. 2d 297, 305 (1967).

WDFA fails to allege sufficient facts in its Answer to meet these required elements for waiver and estoppel. Furthermore, there is no evidence that Techsavies ever made any statement or took any action that could be interpreted as waiving or surrendering any rights with respect to the claims that Techsavies has asserted in this action. Thus, Techsavies is entitled to judgment on the pleadings on WDFA's waiver and estoppel defenses or, in the alternative, summary judgment on those defenses.

### D. WDFA Cannot Establish Joint Authorship in the Collateralizer Software as a Matter of Law

As a defense to Techsavies' copyright infringement claim, WDFA has asserted the defense that it is a joint author of the Collateralizer software, and therefore cannot be held liable for infringement. (Lin Decl., Ex. 6 (Answer, Dkt. # 8), at 7:9-11.) WDFA cannot succeed on this defense, however, as the undisputed facts establish that WDFA is not a joint author to the Collateralizer software.

"To be an author, one must supply more than mere direction or ideas: one must 'translate[] an idea into a fixed, tangible expression entitled to copyright protection.'" *SOS, Inc. v. Payday, Inc.*, 886 F. 2d 1081, 1087 (9th Cir. 1989) (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)). In the case of copyrighted software, an individual who provides input regarding the general functions of the software but does not write any of the actual source code is not considered to be a joint author of the work. *See SOS*, 886 F.2d at 1086-87; *see also*, *Ashton-Tate Corp. v. Ross*, 916 F. 2d 516, 521 (9th Cir. 1990); *Whelan Assocs. v. Jaslow Dental Laboratory*, 609 F. Supp. 1307, 1318-19 (E.D. Pa. 1985), *aff'd*, 797 F.2d 1222 (3d Cir. 1986).

In the present case, there is simply no evidence that WDFA ever contributed any source code that was incorporated into the Collateralizer software. It is undisputed that, throughout the development of the Collateralizer software, the source code for the software was maintained on a server controlled by Techsavies. (UF No. 5; Lin Decl., Ex. 5 (Prasad Dep. Tr.), at 75:14-76:12; Lin Decl., Ex. 6 (Answer, Dkt. # 8), at 12:10-11.) Techsavies did not permit WDFA access to the source code because it did not want WDFA employees making any modifications to the code. (Lin Decl., Ex.

HOWREY LLP

Case No. CV-10-1213-BZ
TECHSAVIES' NOTICE OF MOT. AND MOT. FOR JUDGMENT
ON THE PLEADINGS AND/OR SUMM. JUDGMENT
DM_US:23617866_2

-7-

1  5 (Prasad Dep. Tr.), at 73:15-74:9.)  Indeed, Prasad testified at his deposition that no one at WDFA
2  ever wrote any source code for the development of the Project632 website.  (UF No. 24; Lin Decl., Ex.
3  5 (Prasad Dep. Tr.), at 81:3-20, 87:11-23, 106:13-107:13, 265:11-13.)  Consistent with this fact,
4  WDFA has never identified in this action any lines of source code for the Collateralizer software that
5  were written by WDFA.  (UF No. 25.)

In response, WDFA argues that it is nevertheless a joint author of the Collateralizer because it provided Techsavies with input regarding the overall design and "look and feel" of the website, as well as the functions that were to be performed by the Collateralizer software.  But this is exactly the type of contribution that the Ninth Circuit held in *SOS v. Payday* was insufficient to establish joint authorship in a copyrighted software program.  Rather than actually writing any code for the software, WDFA's role was limited to providing design ideas for the software and the Project632 website.  These ideas, sent to Techsavies in the form of Photoshop images, PowerPoint presentations, and other non-source code formats, were then translated by Techsavies into the tangible expression of the actual source code that would dictate the operation of the Project632 website.  Under *SOS v. Payday*, such contributions do not make WDFA a joint author to the Collateralizer software.  Techsavies is therefore entitled to summary judgment on WDFA's joint work defense.

### E.   WDFA's Breach of Contract Counterclaim Fails as a Matter of Law Because WDFA Has Not Identified any Enforceable Term of any Contract that Techsavies Breached

WDFA's breach of contract counterclaim fails as a matter of law.  According to WDFA's Answer, the contract that Techsavies purportedly breached is an October 2006 oral contract, the terms of which WDFA alleges are as follows:

> WDFA would pay Techsavies a reasonable fee, estimated to be approximately $30,000 to prepare the computer code and provide information technology services necessary to implement a proprietary system for metroPCS that had been invented by Raj Prasad and Jason Hilton, and WDFA would remain the owner of the system, including the computer code prepared by Techsavies to implement the system, with the right to sell or license the system to third parties.

(Lin Decl., Ex. 6 (Answer, Dkt. # 8), at 13:8-14.)  WDFA's Answer further alleges two instances in which Techsavies purportedly breached this agreement:

> In or about August 2008, and continuing thereafter, Techsavies breached the contract by failing to execute reasonable documentation required by law to memorialize WDFA's ownership of the system, including the computer code commissioned by WDFA from Techsavies.
>
> In or about September 2009, Techsavies breached the contract by disputing WDFA's ownership of the system, and by refusing to perform unless WDFA agreed to pay excessive and exorbitant compensation to Techsavies.

(*Id.* at 13:20-25.)

Even assuming that WDFA could convince the jury to accept its version of the October 2006 agreement between the parties, WDFA's breach of contract theories would still fail as a matter of law. WDFA's first theory is that Techsavies orally agreed in October 2006 to assign copyright ownership of the Collateralizer software to WDFA, and breached this agreement when it failed to subsequently execute an assignment of those copyrights to WDFA. Even if such an oral agreement to transfer copyright ownership took place, however (and Techsavies denies that it did), the agreement would be unenforceable. Under the Statute of Frauds provision of the Copyright Act, 17 U.S.C. § 204(a), all agreements transferring ownership of copyrights must be made in writing:

> A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

17 U.S.C. § 204(a). Section 204 furthermore bars breach of contract claims based on oral agreements regarding the transfer of copyrights. *See Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 774 (9th Cir. 1989).

The Ninth Circuit's decision in *Valente-Kritzer Video* is instructive. In that case, the plaintiff company claimed that it had entered into an oral agreement with the defendant, the author of a best-selling book, to negotiate for the production of a home video based upon the book. The plaintiff alleged that, under the terms of the oral agreement, if the plaintiff secured a producer for the video, the defendant would transfer the right to co-produce, distribute, and sell the video to the plaintiff.

The plaintiff performed its part of the agreement, but the defendant refused to transfer over the rights it had allegedly promised to the plaintiff. The plaintiff thereafter sued for breach of contract. The Ninth Circuit held that the plaintiff's breach of contract claim was barred because of the

HOWREY LLP

Case No. CV-10-1213-BZ
TECHSAVIES' NOTICE OF MOT. AND MOT. FOR JUDGMENT
ON THE PLEADINGS AND/OR SUMM. JUDGMENT
DM_US:23617866_2

-9-

requirement under 17 U.S.C. § 204(a) that a contract transferring an exclusive license in a copyrighted work be in writing. *Id.* at 774.

Similarly, here WDFA alleges a breach of an oral agreement to transfer over ownership rights to a copyrighted work. Even if WDFA could prove that such an oral agreement was actually entered into by the parties, it would be unenforceable under 17 U.S.C. § 204(a). WDFA's first breach of contract theory is therefore legally baseless. *See also*, *Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1162 (S.D.N.Y. 1988) ("[T]here is no merit to plaintiff's contention that a contract to transfer a copyright can be enforced without a writing.").

WDFA's second breach of contract theory also fails as a matter of law. This second theory is based on the allegation that "[i]n or about September 2009, Techsavies breached the [October 2006] contract by disputing WDFA's ownership of the system, and by refusing to perform unless WDFA agreed to pay excessive and exorbitant compensation to Techsavies." (Lin Decl., Ex. 6 (Answer, Dkt. # 8), at 13:23-25.) WDFA's assertion that Techsavies breached the October 2006 agreement by "disputing ownership of the system," however, is merely the same theory that Techsavies was bound by an oral agreement to assign copyright ownership of the Collateralizer software to WDFA. As discussed above, even if WDFA could prove the existence of such an agreement, it would be unenforceable under the Statute of Frauds.

As for WDFA's vague allegation that Techsavies breached the October 2006 agreement "by refusing to perform unless WDFA agreed to pay excessive and exorbitant compensation to Techsavies," there is no evidence that Techsavies failed to perform any term of the October 2006 agreement as that agreement has been characterized by WDFA. WDFA alleges that the oral agreement in October 2006 was for Techsavies "to prepare the computer code and provide information technology services necessary to implement a proprietary system for metroPCS that had been invented by Raj Prasad and Jason Hilton." (*Id.* at 13:8-14.) Setting aside WDFA's mischaracterization of who "invented" the proprietary system, it is undisputed that Techsavies did in fact prepare computer code and provide services necessary for WDFA to launch the system in September 2007, when the Project632 website "went live." (UF No. 8.) Thus, under WDFA's own allegations regarding the terms of the October 2006 agreement, Techsavies had completed its performance of the agreement

HOWREY LLP

Case No. CV-10-1213-BZ
TECHSAVIES' NOTICE OF MOT. AND MOT. FOR JUDGMENT
ON THE PLEADINGS AND/OR SUMM. JUDGMENT
DM_US:23617866_2

-10-

(save for the unenforceable term regarding assignment of copyrights) by 2007. Any claim that Techsavies breached that agreement in 2009 – two years after its performance had been completed – therefore defies all logic.

In sum, on closer inspection, it is clear that WDFA's breach of contract theories are wholly meritless, and WDFA's breach of contract counterclaim should be dismissed on summary judgment, or in the alternative, on the pleadings under Federal Rule of Civil Procedure 12(c). *See Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999) (judgment on the pleadings under Rule 12(c) is proper "when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.").

### F.   WDFA Cannot Succeed on Its Fraud Counterclaim Because It Has Failed to Show any Misrepresentation by Techsavies that Was Relied Upon by WDFA

WDFA has no evidence to support its fraud counterclaim. Under California law, the elements of fraud are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Nagy v. Nagy*, 210 Cal. App. 3d 1262, 1268 (1989). In its Answer, WDFA alleges the following facts in support of its fraud counterclaim:

> In or about October 2006, Bob Conner and Marouan Hajjoubi, the managing partners of Techsavies, promised to Raj Prasad of WDFA that Techsavies would provide computer programming services to WDFA in support of WDFA's proprietary system for creating and distributing advertising to metroPCS. Messrs. Conner and Hajjoubi made this promise with the intention to deceive and defraud Mr. Prasad into believing that the services promised by Techsavies would enhance the value of the system to its owner, now WDFA, so that Mr. Prasad and WDFA would act in reliance on the promise. When Messrs. Conner and Hajjoubi made this promise, they knew that it was false, in that Messrs. Conner and Hajjoubi secretly intended to claim ownership of the system for themselves. At the time that Messrs. Conner and Hajjoubi made the promise, Mr. Prasad and others at WDFA were unaware that it was false, and were unaware of Messrs. Conner and Hajjoubi's true intentions.

(Lin Decl., Ex. 6 (Answer, Dkt. # 8), at 14:7-17.) As stated in this paragraph, the apparent misrepresentation by Techsavies was the promise "that Techsavies would provide computer programming services to WDFA in support of WDFA's proprietary system for creating and distributing advertising to metroPCS." But it is undisputed that Techsavies did in fact provide computing programming services to WDFA, and thus there has been no misrepresentation. (UF 3-6, 21-23.) Indeed, WDFA admits in its Answer that Techsavies did provide the programming services

HOWREY LLP

Case No. CV-10-1213-BZ
TECHSAVIES' NOTICE OF MOT. AND MOT. FOR JUDGMENT
ON THE PLEADINGS AND/OR SUMM. JUDGMENT
DM_US:23617866_2

-11-

1  requested by WDFA, and merely complains about the amount of money it was charged for these
2  services.  (*See* Lin Decl., Ex. 6 (Answer, Dkt. # 8), at 14:19-20) ("WDFA was induced to pay almost
3  $400,000 to Techsavies, which is far in excess of the true value of the services provided.").  That
4  WDFA subjectively believes that it paid too much for Techsavies' services, however, does not give
5  rise to a fraud claim.

6  In addition, WDFA alleges that the promise made by Techsavies "was false, in that Messrs.
7  Conner and Hajjoubi secretly intended to claim ownership of the system for themselves."  (Lin Decl.,
8  Ex. 6 (Answer, Dkt. # 8), at 14:13-15.)  But Conner and Hajjoubi's intention to claim ownership over
9  the system, whether public or secret, does not make their promise to provide programming services to
10 WDFA false.  WDFA's fraud counterclaim as pleaded in its Answer is therefore utterly nonsensical,
11 and should be dismissed on summary judgment, or in the alternative, on the pleadings under Federal
12 Rule of Civil Procedure 12(c).  *See Fajardo*, 179 F.3d at 699.

13 **G.     WDFA Cannot Establish an Interference with Business Relations Counterclaim**

14 WDFA has no basis for asserting an interference with business relations counterclaim.  As an
15 initial matter, there is no such thing as an "interference with business relations" claim as pleaded in
16 WDFA's Answer under California law.  (*See* Lin Decl., Ex. 6 (Answer, Dkt. # 8), at 14:26-15:15.)
17 Rather, California law recognizes two types of business interference claims: 1) intentional interference
18 with contractual relations, and 2) intentional interference with prospective economic advantage.  *See*
19 *Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-93 (1995).  WDFA's Answer alleges
20 an interference with an actual contract, rather than a prospective one, as the Answer refers repeatedly
21 to "an ongoing business relationship between WDFA and its customer, metroPCS" that Techsavies
22 allegedly interfered with.  (*See* Lin Decl., Ex. 6 (Answer, Dkt. # 8), at 15:1-9.)

23 Under California law, a cause of action for intentional interference with contractual relations
24 requires: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this
25 contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual
26 relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."
27 *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

28

HOWREY LLP

Case No. CV-10-1213-BZ
TECHSAVIES' NOTICE OF MOT. AND MOT. FOR JUDGMENT
ON THE PLEADINGS AND/OR SUMM. JUDGMENT
DM_US:23617866_2

-12-

1       In its Answer, WDFA bases its "interference with business relations" counterclaim on the
2  allegation that "[i]n or about September 2009 and continuing thereafter, Techsavies intentionally and
3  willfully interfered with the business relationship between WDFA and metroPCS by withholding
4  computerized data that franchisees of metroPCS had transmitted to WDFA over the internet by means
5  of the proprietary system at www.project632.com." (Lin Decl., Ex 6 (Answer, Dkt. # 8), at 15:6-9.)
6  Thus, in order to succeed on its intentional interference with contractual relations claim, WDFA must
7  show that there was some valid contract between WDFA and MetroPCS that Techsavies intentionally
8  disrupted by withholding data regarding MetroPCS franchisees.

9       WDFA has offered no such evidence. It is undisputed that WDFA has not alleged in this
10 action that it ever breached any agreement with MetroPCS. (UF No. 19.) WDFA also has not alleged
11 that MetroPCS ever breached any agreement with it in this action. (UF No. 20.) Having made no
12 allegations of any breaches of contract, WDFA's only remaining argument would be that Techsavies'
13 alleged activities caused some sort of disruption of one of WDFA's contracts with MetroPCS. But
14 WDFA has produced no evidence that any contractual relationship with MetroPCS was harmed in any
15 way due to Techsavies' alleged refusal to hand over MetroPCS franchisee data to WDFA. Indeed,
16 there is no evidence that MetroPCS ever complained to WDFA about the alleged loss of data regarding
17 MetroPCS franchisees. (UF No. 29.) In the absence of any such showing, WDFA cannot succeed on
18 an intentional interference with contractual relations claim. *See Bed, Bath & Beyond of La Jolla, Inc.*
19 *v. La Jolla Village Square Venture Partners*, 52 Cal. App. 4th 867, 878 (Cal. App. 4th Dist. 1997)
20 ("[A] cause of action for intentional interference with contractual relations requires an underlying
21 enforceable contract. Where there is no existing enforceable contract, only a claim for interference
22 with prospective advantage may be pleaded.")

23       Moreover, Techsavies notes that WDFA designated Raj Prasad as its Rule 30(b)(6) witness on
24 the topic of the factual and legal basis for WDFA's interference counterclaim, and when asked at his
25 deposition what actions Techsavies took that interfered with WDFA's business relationship with
26 MetroPCS, Prasad made no mention of Techsavies' alleged refusal to turn over MetroPCS franchisee
27 data to WDFA. (Lin Decl., Ex. 5 (Prasad Dep. Tr.), at 259:4-260:19.) Rather, Prasad identified only
28 Techsavies' refusal to follow through on the alleged oral promise to transfer copyrights and its general

"aggression" toward WDFA as constituting interference with WDFA's business. (*Id.*) But these alleged acts have nothing to do with any WDFA contract with MetroPCS. Thus, even WDFA's corporate representative could not articulate a coherent theory for WDFA's interference counterclaim.

Finally, while WDFA alleges that it lost sales of advertising materials to franchisees of MetroPCS because of Techsavies' alleged refusal to hand over the franchisee data, WDFA fails to explain how such lost sales were caused by any breach or disruption of any contract between WDFA and MetroPCS.[4] Absent such an explanation, its allegations regarding lost sales to MetroPCS franchisees is completely irrelevant to its interference counterclaim. Summary judgment should therefore be granted in Techsavies' favor on WDFA's interference with business relations counterclaim.

## IV.  CONCLUSION

For the foregoing reasons, Techsavies respectfully requests a judgment on the pleadings and/or summary judgment in Techsavies' favor on WDFA's affirmative defenses of 1) copyright misuse, 2) waiver/estoppel, and 3) joint work, as well as on WDFA's counterclaims of 1) breach of contract, 2) fraud, and 3) interference with business relations.

Dated: February 9, 2011                    HOWREY LLP

By: */s/ James C. Pistorino*
Daniel T. Shvodian (SBN 184576)
James C. Pistorino (SBN 226496)
Richard C. Lin (SBN 209233)
HOWREY LLP
1950 University Avenue, 4th Floor
East Palo Alto, CA  94303
Telephone:  (650) 798-3500
Facsimile:   (650) 798-3600
Email: *shvodiand@howrey.com*
Email: *pistorinoj@howrey.com*
Email: *linrichard@howrey.com*

Attorneys for Plaintiff
TECHSAVIES, LLC

---

[4] Indeed, WDFA's damages expert, M. Monica Ip, did not and could not specify what amount of damages, if any, WDFA suffered as a result of the breach or disruption of any contract with MetroPCS. (Lin Decl., Ex. 15 (Ip opening report), at 3-4.)

HOWREY LLP

Case No. CV-10-1213-BZ
TECHSAVIES' NOTICE OF MOT. AND MOT. FOR JUDGMENT
ON THE PLEADINGS AND/OR SUMM. JUDGMENT
DM_US:23617866_2

-14-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HOWREY LLP**

Case No. CV-10-1213-BZ
TECHSAVIES' NOTICE OF MOT. AND MOT. FOR JUDGMENT
ON THE PLEADINGS AND/OR SUMM. JUDGMENT
DM_US:23617866_2

-15-

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |

1

2  I am employed in the County of San Mateo, State of California. I am over the age of 18 and not a party to the within action. My business address is 1950 University Avenue, 4th Floor, East Palo

3  Alto, California 94303.

4  On February 9, 2011, I served the within:

5  **PLAINTIFF TECHSAVIES, LLC'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR SUMMARY JUDGMENT ON DEFENDANT WDFA**

6  **MARKETING, INC.'S AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

7  on the interested parties in said action as stated below.

8  J. Daniel Sharp
Anne W. Kuykendall
9  CROWELL & MORING LLP
275 Battery Street, 23rd Floor
10  San Francisco, CA  94111
Telephone: 415.365.7372
11  Facsimile:  415.986.2827
Email:  dsharp@crowell.com
12  Email:  akuykendall@crowell.com

13  *Attorneys for Defendant WDFA Marketing, Inc.*

14  ☐  (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by
15  said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated
16  above, with fees for overnight delivery paid or provided for.

17  ☐  (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal
18  service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more
19  than 1 day after date of deposit for mailing in affidavit.

20  ☐  (PERSONAL SERVICE) I delivered such envelope(s) by hand to the offices of addressee.

21  ☐  (BY ELECTRONIC MAIL)  I caused such document(s) to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the submission, any
22  electronic message or other indication that the transmission was unsuccessful.

23  ☒  (BY CM/ECF)  I caused such document(s) to be sent via electronic mail through the Case Management/Electronic File system with the U.S. District Court for the Northern District of
24  California.

25  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on February 9, 2011, at East Palo Alto, California.

26

27  Tracy Gibbs                                   */s/ Tracy Gibbs*
   (Type or print name)                              (Signature)

28

**HOWREY LLP**

Case No. CV-10-1213-BZ
TECHSAVIES' NOTICE OF MOT. AND MOT. FOR JUDGMENT
ON THE PLEADINGS AND/OR SUMM. JUDGMENT
DM_US:23617866_2