1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10

11    TECHSAVIES, LLC,                    )
                                          )
12                                        )      No. C10-1213 BZ
                    Plaintiff(s),         )
13                                        )
            v.                            )      **ORDER DENYING DEFENDANT'S**
14                                        )      **MOTION FOR SUMMARY JUDGMENT**
      WDFA MARKETING INC.,                )
15                                        )
                                          )
16                                        )
                    Defendant(s).         )
17                                        )
                                          )
18    _____)

19          This lawsuit arises from a failed business relationship

20    between plaintiff Techsavies, owned by Bob Conner and Marouan

21    Hajjoubi, and defendant WDFA Marketing, primarily owned by

22    Rajneel Prasad.[1]  Techsavies alleges that the parties reached

23    an oral agreement in 2006 to become partners in a business

24    venture based on WDFA's idea for a software program.  The plan

25    was for Techsavies to develop and maintain this software for

26    _____

27          [1]     The parties have consented to the Court's
      jurisdiction for all proceedings, including entry of final
28    judgment under 28 U.S.C. § 636(c).

                                        1

1  WDFA to use in its marketing business.  Besides collecting

2  some payments for this work, Techsavies would also receive a

3  40% share of the revenues.

4  WDFA, however, contests Techsavies' interpretation of the

5  parties' relationship.  WDFA contends that it never agreed to

6  partner with Techsavies, and instead hired Techsavies to be an

7  independent contractor with the limited role of developing and

8  maintaining the software.  WDFA has moved for summary judgment

9  on all six claims alleged by Techsavies.  For the reasons

10 explained below, this summary judgment motion is **DENIED** in its

11 entirety because there is a genuine dispute about the material

12 facts at issue.[2]

13 **A.   LEGAL STANDARD FOR SUMMARY JUDGMENT**

14 The law concerning the standard for summary judgment is

15 not novel.  The Court discusses it here only because WDFA's

16 position regarding this standard contributes to the misplaced

17 arguments it makes in its summary judgment motion.  The

18 parties agree that summary judgment is only appropriate when

19 there is no genuine dispute as to any material fact, and the

20 moving party is entitled to judgment as a matter of law.  Fed.

21 R. Civ. P. 56.  If a reasonable jury could return a verdict in

22 favor of the nonmoving party, then a genuine issue of material

23 fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

24 248 (1986).  On a motion for summary judgment, the moving

25 party has both the initial burden of production as well as the

26 _____

27 [2]    At oral argument, counsel for both parties presented
   many facts that were not contained in the record.  This Order
   disregards the testimony from counsel and is based on the
28 properly submitted evidence in the parties' papers.

1  ultimate burden of persuasion that there is no genuine issue

2  of material fact.  Nissan Fire & Marine Ins. Co., Ltd. v.

3  Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

4       WDFA misunderstands what happens once the moving party

5  meets its initial burden.  WDFA is correct that Techsavies,

6  the plaintiff and nonmoving party, must then "present some

7  evidence establishing each element of [its] claims on which

8  [it] would bear the burden of proof a trial."  Motion at 13

9  (citing Smolen v. Deloitte, Haskins & Sells, 921 F.2d 959, 963

10  (9th Cir. 1990)).  Techsavies cannot defeat summary judgment

11  by relying on conclusory statements or allegations in its

12  complaint.  Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107,

13  1112 (9th Cir. 2003).  But WDFA is wrong when it argues that

14  the requirement for "some evidence" is not met if Techsavies

15  relies solely on self-serving deposition testimony.  Reply at

16  1; 14-15.  It has "long [been] held that a plaintiff may

17  defeat summary judgment with his or her own deposition."  Paz

18  v. Wauconda Healthcare & Rehab. Centre, LLC, 464 F.3d 659,

19  664-65 (7th Cir. 2006); see also Celotex Corp. v. Catrett, 477

20  U.S. 317, 324 (1986) (the nonmoving party is required "to go

21  beyond the pleadings and by her own affidavits, *or by the*

22  *depositions*, answers to interrogatories, and admissions on

23  file, designate specific facts showing that there is a genuine

24  issue for trial") (emphasis added and internal quotations

25  omitted).

26       This rule permitting a party's own deposition testimony

27  to defeat summary judgment recognizes that courts cannot make

28  credibility determinations or weigh conflicting evidence at

3

1   the summary judgment stage.  See T.W. Elec. Serv. v. Pacific

2   Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir.

3   1987)(citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

4   Corp., 475 U.S. 574, 586 (1986)).  These duties are reserved

5   for the trier of fact.  Id.  Courts are instead required to

6   believe the nonmoving party on summary judgment, and view the

7   evidence in a light most favorable to that party.  Id.

8        In arguing against Techsavies' use of self-serving

9   deposition testimony, WDFA incorrectly relies on Kennedy v.

10  Applause, Inc.  90 F.3d 1477 (9th Cir. 1996).  In Kennedy, the

11  plaintiff testified at her deposition that she was not totally

12  disabled.  Id. at 1481.  This directly contradicted

13  plaintiff's earlier representations on disability claim forms

14  that she was totally disabled, as well as the medical evidence

15  in the case.  Id.  Kennedy affirmed summary judgment in

16  defendant's favor because the inconsistencies between

17  plaintiff's deposition testimony and her other statements did

18  not present "a sufficient disagreement to require submission

19  to a jury."  Id.  Kennedy's limited holding,[3] however, does

20  not help WDFA since it has not presented any evidence that

21  Conner and Hajjoubi's deposition testimony directly

22  contradicted their previous statements.  See Jones v. Tozzi,

23  2007 WL 433116 at *11 (E.D. Cal. 2007).

24  ///

25

---

26   [3]   Kennedy's holding merely allows courts to disregard
self-serving affidavits that are contradicted by plaintiffs'
own prior statements and other types of undisputed evidence.
27  See Jones v. Tozzi, 2007 WL 433116 at *11 (E.D. Cal. 2007).
Thus, "Kennedy is far from a blanket prohibition against
28  considering all affidavits that are self-serving."  Id.

4

1    **B.   TECHSAVIES' CLAIMS AGAINST WDFA**

2         I.      Breach of Contract Claim

3         WDFA's argument against Techsavies' breach of contract

4    claim exemplifies how WDFA misapplies the summary judgment

5    standard.   Under California Civil Code § 1622, oral contracts

6    are just as valid as written contracts.   Nonetheless, WDFA

7    contends that Techsavies "has no evidence of a final

8    agreement" because "the *only* evidence that Techsavies has is

9    the self-serving testimony of its own principals regarding a

10   single oral discussion in October 2006."   Motion at 23.   As

11   discussed above, Techsavies' own testimony is enough to raise

12   a triable issue regarding whether an oral contract existed and

13   was breached.   WDFA also does not provide any authority that

14   an oral agreement cannot be reached in a single discussion

15   between the parties, as Techsavies claims transpired.   Both

16   Conner and Hajjoubi testified at their depositions that WDFA

17   offered Techsavies a 60/40 respective split of revenues in

18   exchange for Techsavies developing as well as maintaining the

19   software, and both parties then agreed to these terms.[4]

20   Hajjoubi Depo. at 100-102, 110-12; Conner Depo. at 35-36, 45-

21   46.

22        WDFA contends that the details of the alleged agreement

23   are too vague to constitute all the essential terms of a

24   finalized contract.   Reply at 10.   Hajjoubi's testimony,

25   _____

26   [4]    Conner and Hajjoubi's testimony regarding the
     proposed 60/40 split is not completely uncorroborated.   In his
     declaration, Prasad admits that in his discussions with
27   Techsavies he offered to pay it 40% of the license fees or
     other revenues from the sale of the software to new customers.
28   Decl. of Prasad, ¶ 11.

1 however, explains that the terms of the agreement were final

2 and "very simple." Hajjoubi Depo. at 100-02. Although

3 Hajjoubi does not explain the contract terms articulately,

4 viewing the evidence in a light most favorable to Techsavies,

5 at this juncture, the Court cannot say that a reasonable jury

6 could not conclude that the profits gained from the software's

7 use would be split 60/40, and that the contract terms were

8 clear enough for the parties to understand what each was

9 required to do. Id. at 110-12. Techsavies' obligations were

10 to develop and maintain the software under WDFA's directions,

11 and WDFA was responsible for then selling and managing the use

12 of the software. Hajjoubi Depo. at 101; Conner Depo. at 46.

13 While the parties did not address more specific details

14 regarding the agreement, "it is not necessary that each term

15 of an oral contract be spelled out in minute detail." Gold

16 Seal Productions v. R. K. O. Radio Pictures, 134 Cal.App.2d

17 843, 861 (1955).

18 Based on the above, this matter is the quintessential "he

19 said, she said" dispute that is not appropriate for summary

20 judgment. See Jones v. Tozzi, 2007 WL 433116 at *11 (E.D.

21 Cal. 2007). WDFA points out that some of Techsavies' conduct

22 after the agreement was supposedly reached shows that there

23 was never a contract between the parties. But WDFA will have

24 the opportunity to present this evidence to the jury, which

25 can properly evaluate the credibility of all witnesses and

26 weigh the conflicting evidence — something that this Court

27 cannot do — and determine whether an agreement was finalized

28 between the parties. Because a reasonable juror might believe

6

1   Conner or Hajjoubi and find in Techsavies' favor, granting

2   judgment as a matter of law is inappropriate.  WDFA's motion

3   on this claim is therefore denied.

4           II.     Partnership Claim

5           California courts analyze claims for breach of

6   partnership and breach of joint venture essentially in the

7   same manner.  Bank of Cal. v. Connolly, 36 Cal.App.3d 350, 364

8   (1973); see also People v. Park, 87 Cal.App.3d 550, 564

9   (1978).  To establish its partnership claim, Techsavies must

10  show that it reached an agreement with WDFA in which the

11  parties had a joint interest in a common business undertaking,

12  an understanding as to the sharing of profits and losses, and

13  a right of joint control.  Id.; see also Hupfeld v. Wadley, 89

14  Cal.App.2d 171, 174 (1948) (plaintiff may obtain relief based

15  on breach of a joint venture even though plaintiff's complaint

16  alleged a partnership).  As with contracts, in California a

17  partnership or joint venture agreement does not need to be in

18  writing to be binding.  Weiner v. Fleischman, 54 Cal.3d 476,

19  490 (1991).  The question of whether "a partnership or joint

20  venture exists is primarily a factual question to be

21  determined by the trier of fact from the evidence and

22  inferences to be drawn therefrom."  Connolly, 36 Cal.App.3d.

23  at 364.

24          The analysis of the partnership claim is similar to the

25  analysis of the breach of contract claim.  Both Conner and

26  Hajjoubi testified that the parties entered into a partnership

27  agreement to develop and sell the software that Prasad

28  envisioned would lead to a profitable business.  Hajjoubi

7

1    Depo. at 100-02; Conner Depo. at 45-46. The parties delegated

2    the management and control of this venture so that Techsavies,

3    working at the direction of WDFA, would develop and manage the

4    software while WDFA would be responsible for selling the

5    software and operating the marketing aspect of the business.

6    Id. Such a delegation of responsibilities is acceptable under

7    a partnership or joint venture agreement. See Scottsdale Ins.

8    Co. v. Essex Ins. Co., 98 Cal.App.4th 86, 93 (2002); Holmes v.

9    Lerner, 74 Cal.App.4th 442, 458 (1999) ("there is nothing

10    unusual about a partnership in which one party supplies an

11    idea which the other party brings into substantive form").

12    Conner and Hajjoubi also claim — and have so testified

13    at depositions — that there was an understanding regarding

14    the sharing of profits and losses with respect to the parties'

15    common undertaking. Hajjoubi Depo. at 110-12; Conner Depo. at

16    45-49. Viewing the submitted deposition testimony in a light

17    most favorable to Techsavies, the profit sharing plan may be

18    interpreted by a reasonable jury to be an agreement between

19    the two parties to share the profits after certain expenses

20    were accounted for.[5] See Hajjoubi Depo. at 110-12. As

21    further proof that there is a genuine dispute regarding this

22    issue, Prasad admits that he had discussions with Conner and

23

24         [5]    WDFA contends that the alleged 60/40 profit sharing agreement, which it claims was illogical, vague, and never applied by the parties, does not constitute a valid agreement

25    to share profits and losses. Motion at 21. But Techsavies only has to show there was an understanding that profits and

26    losses would be shared, to which Conner and Hajjoubi have testified. The actual sharing of profits is not an

27    indispensable element of a partnership, but evidence that may be considered when determining if a partnership exists.

28    Holmes, 74 Cal.App.4th at 456-57.

8

1  Hajjoubi about Techsavies receiving 40% of the license fees or

2  other revenues from the sale of the software to new customers.

3  Decl. of Prasad, ¶ 11.  As explained earlier, this Court is

4  not persuaded by WDFA's argument that the evidence of the

5  partnership agreement is not sufficient because it is only

6  provided through Conner and Hajjoubi's self-serving deposition

7  testimony. Reply at 14-15.  Rather, the evidence introduced by

8  Techsavies regarding the existence of a partnership raises a

9  triable issue of fact that is proper for the jury to evaluate.

10  Consequently, summary judgment is denied on this claim as

11  well.

12          III.   Copyright Claim

13      To prevail on its claim of copyright infringement,

14  Techsavies must establish that it owned a copyright to the

15  software, and WDFA infringed that copyright beyond the scope

16  of any license it owned.  See MAI Sys. Corp. v. Peak Computer,

17  Inc., 991 F.2d 511, 517 (9th Cir. 1993).  For the purposes of

18  this motion, WDFA concedes that Techsavies owned a copyright

19  to the software.  Motion at 14.  WDFA instead argues that it

20  had an implied license[6] to use the software, including its

21  source code,[7] in accordance with the Ninth Circuit's holding

22  _____

23  [6]      Although exclusive licenses must be in writing,
   nonexclusive licenses may be granted orally or by implication.
24  Asset Marketing Sys., Inc., v. Gagnon, 542 F.3d 748, 754 (9th
   Cir. 2008).

25  [7]      While both parties use the terms "software," "source
   code," and "website" interchangeably, there is a difference
26  between the terms that is material to determining whether
   Techsavies granted WDFA an implied license.  Techsavies
27  registered two versions of the software, which it calls the
   "Collateralizer," with the United States Copyright Office.  The
28  copyrights specifically protect the software's source code that

1  in <u>Asset Marketing Sys., Inc., v. Gagnon</u>.  542 F.3d 748 (9th

2  Cir. 2008).

3      Under the rule in <u>Asset Marketing</u>, WDFA can establish it

4  had an implied license with respect to the copyrighted

5  software if it shows that there is no genuine dispute of

6  material fact regarding the following: (1) WDFA (the licensee)

7  requested the creation of the software; (2) Techsavies (the

8  licensor) created the software and delivered it to WDFA; and

9  (3) Techsavies intended for WDFA to use, retain, and modify

10 the software.  <u>Id.</u> at 754-55.  There is no dispute that WDFA

11 asked Techsavies to create the software.  Opposition at 10.

12 Moreover, it is undisputed that the software Techsavies

13 created was used to run WDFA's website www.project632.com.

14 The parties, however, disagree on whether Techsavies delivered

15 the software and intended for WDFA to have a license to use

16 the software, particularly its source code.

17     In <u>Asset Marketing</u>, the Ninth Circuit held that the

18 element of delivery was satisfied when the licensor stored the

19 source code of the copyrighted work on the licensee's

20 computers.  542 F.3d at 755-56.  But this did not happen here

21 — WDFA concedes that Techsavies has always maintained control

22 of the source code on its own computers.  Prasad Depo. at 75-

23 76.  Accordingly, under Ninth Circuit precedent, the delivery

24 element for an implied license has not been met.  WDFA,

25 however, urges this Court to follow the holdings of other

26 _____

27 is not available in the public domain.  It is this protected
   source code that WDFA was not allowed to access — and not the
   public website — that is the basis of Techsavies' copyright
28 infringement claim.

10

1   district courts.  Reply at 4.  There is dicta in these cases

2   that the delivery element was satisfied when the website was

3   launched.  See Holtzbrinck Publ'n Holdings, L.P. v. Vyne

4   Commc'ns, Inc., 2000 WL 502860 at *4 (S.D.N.Y. 2000); Attig v.

5   DRG, Inc., 2005 WL 730681 at *5 (E.D.Pa. 2005).  These cases,

6   which are not from the Ninth Circuit, contain little analysis

7   regarding delivery and are factually distinguishable.[8]

8   Regardless, a ruling on this issue is not necessary for the

9   purposes of this motion.  This is because WDFA cannot

10  establish the third element under the Asset Marketing test

11  since there is a genuine dispute regarding whether Techsavies

12  intended to grant WDFA an implied license to use the source

13  code.

14       In evaluating this intent factor, the Court examines

15  Techsavies' "objective intent at the time of the creation and

16  delivery of the software as manifested by the parties'

17  conduct."  542 F.3d at 756.  Here, both Conner and Hajjoubi

18  have submitted declarations that they never intended to grant

19  an implied license to WDFA to use the source code.  Decl. of

20  Hajjoubi ¶¶ 4-5; Decl. of Conner ¶¶ 4-5.  Conner and Hajjoubi

21  corroborate their subjective intent by introducing objective

22

---

23  [8]    In Holtzbrinck, the licensor had given the licensee
    password access to the licensor's computer which enabled the
    licensee to transfer the copyrighted material.  2000 WL 502860

24  at *2.  Attig found that defendant had an implied license to
    use its own website, which included material that plaintiff

25  developed and copyrighted while working on them.  Here the
    issue is not whether WDFA had an implied license to use the

26  website Techsavies created, but whether it had an implied
    license to use Techsavies' source code to create its own

27  website.  Had WDFA sued Techsavies for access to the website
    when Techsavies threatened to shut down the website, the result

28  might have been different. 2005 WL 730681 at *5.

1   evidence of their conduct that suggests they did not intend to

2   grant an implied license.  They presented evidence that

3   Techsavies always maintained exclusive control over the

4   software's source code, and never permitted WDFA to have any

5   access to the code.  Prasad Depo. at 75-76.  Prasad admits

6   that Techsavies was so adamant about maintaining sole control

7   of the source code that it required WDFA to provide images of

8   changes that needed to be made to the software, and Techsavies

9   would then alter the source code from these images.  Prasad

10  Depo. at 79-83.

11       Not permitting WDFA to have any access to the source code

12  evidenced Techsavies' intent to deny WDFA a license to the

13  source code.  WDFA admits that in 2009 it hired computer

14  programmers to write a new version of the software source code

15  so WDFA may have full access to it.  Decl. of Prasad, ¶ 26.

16  Based on these undisputed facts, this Court cannot find as a

17  matter of law that Techsavies intended to grant WDFA an

18  implied license to the software and its source code.  Even if

19  this Court found that there was an implied license, a genuine

20  dispute remains regarding whether WDFA exceeded the scope of

21  this license by hiring programmers to gain full control of the

22  copyrighted source code.  Summary judgment is therefore denied

23  with respect to Techsavies' copyright infringement claim.

24       IV.   Remaining Claims

25       WDFA also moved for summary judgment on Techsavies'

26  remaining claims: (1) violation of California Business &

27  Professions Code § 17200 (Section 17200); (2) promissory

28  estoppel; and (3) unjust enrichment.  Techsavies opposition

12

1  persuasively argued against this part of WDFA's motion, and

2  WDFA did not address Techsavies' arguments or these claims in

3  its reply.  This Court therefore finds that judgment as a

4  matter of law is inappropriate for these three claims.

5      Techsavies' Section 17200 claim alleges that WDFA's

6  conduct in breaching the contract between the two parties also

7  independently violated Section 17200's ban on unfair,

8  unlawful, or deceptive business practices.  Because this Court

9  does not grant WDFA summary judgment on the contract claim,

10 Techsavies' Section 17200 claim also withstands summary

11 judgment.  See Sybersound Records, Inc. v. UAV Corp., 517 F.3d

12 1138, 1152 (9th Cir. 2008) ("breach of a contract may form the

13 predicate for a Section 17200 claim, provided it also

14 constitutes conduct that is unlawful, or unfair, or

15 fraudulent").

16     Summary judgment is also inappropriate for Techsavies'

17 promissory estoppel claim.  Techsavies pleads this claim as an

18 alternative theory of liability in case the jury finds that

19 there was no contract between the parties.  This is

20 permissible.  See MZ Ventures, LLC v. Mitsubishi Motor Sales

21 of Am., Inc., 1999 WL 33597219 at *11 (C.D. Cal. 1999).

22     Lastly, WDFA contends that Techsavies already received

23 more than $450,000 for its services and is consequently not

24 the victim of any injustice to warrant an unjust enrichment

25 claim.  Motion at 25.  There is, however, a genuine dispute

26 regarding whether WDFA was unjustly enriched considering the

27 evidence introduced by Techsavies that it spent between 7,800

28 to 9,610 hours working on the software and should have been

13

1    paid between $2.3 to $2.9 million for this work.  Opposition

2    at Ex. 14.  Conner and Hajjoubi also testified that much of

3    the amount it billed WDFA was for maintenance.  Hajjoubi Depo.

4    at 82-83.  Accordingly, summary judgment is **DENIED** on this

5    claim as well.

6        For the foregoing reasons, defendant's summary judgment

7    motion is **DENIED** in its entirety.

8    Dated: February 10, 2011

9    _____
     Bernard Zimmerman

10   United States Magistrate Judge

11

12

13
     G:\BZALL\-BZCASES\TECHSAVIES V. WDFA MKTG\ORDER DENYING DEFENDANT'S SUMMARY
14   JUDGMENT MOTION.FINAL VERSION AFTER HEARING(1).wpd

15

16

17

18

19

20

21

22

23

24

25

26

27

28