UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TECHSAVIES, LLC, <br><br> Plaintiff(s), <br><br> v. <br><br> WDFA MARKETING INC., <br><br> Defendant(s). | No. C10-1213 BZ <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This lawsuit arises from a failed business relationship between plaintiff Techsavies, owned by Bob Conner and Marouan Hajjoubi, and defendant WDFA Marketing, primarily owned by Rajneel Prasad.[1]  Techsavies alleges that the parties reached an oral agreement in 2006 to become partners in a business venture based on WDFA's idea for a software program.  The plan was for Techsavies to develop and maintain this software for

---

[1] The parties have consented to the Court's jurisdiction for all proceedings, including entry of final judgment under 28 U.S.C. § 636(c).

1

1  WDFA to use in its marketing business.  Besides collecting
2  some payments for this work, Techsavies would also receive a
3  40% share of the revenues.
4      WDFA, however, contests Techsavies' interpretation of the
5  parties' relationship.  WDFA contends that it never agreed to
6  partner with Techsavies, and instead hired Techsavies to be an
7  independent contractor with the limited role of developing and
8  maintaining the software.  WDFA has moved for summary judgment
9  on all six claims alleged by Techsavies.  For the reasons
10 explained below, this summary judgment motion is **DENIED** in its
11 entirety because there is a genuine dispute about the material
12 facts at issue.[2]
13 **A.   LEGAL STANDARD FOR SUMMARY JUDGMENT**
14     The law concerning the standard for summary judgment is
15 not novel.  The Court discusses it here only because WDFA's
16 position regarding this standard contributes to the misplaced
17 arguments it makes in its summary judgment motion.  The
18 parties agree that summary judgment is only appropriate when
19 there is no genuine dispute as to any material fact, and the
20 moving party is entitled to judgment as a matter of law.  Fed.
21 R. Civ. P. 56.  If a reasonable jury could return a verdict in
22 favor of the nonmoving party, then a genuine issue of material
23 fact exists.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
24 248 (1986).  On a motion for summary judgment, the moving
25 party has both the initial burden of production as well as the

---

[2]  At oral argument, counsel for both parties presented many facts that were not contained in the record.  This Order disregards the testimony from counsel and is based on the properly submitted evidence in the parties' papers.

1 ultimate burden of persuasion that there is no genuine issue
2 of material fact. <u>Nissan Fire & Marine Ins. Co., Ltd. v.</u>
3 <u>Fritz Companies, Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).
4     WDFA misunderstands what happens once the moving party
5 meets its initial burden. WDFA is correct that Techsavies,
6 the plaintiff and nonmoving party, must then "present some
7 evidence establishing each element of [its] claims on which
8 [it] would bear the burden of proof a trial." Motion at 13
9 (citing <u>Smolen v. Deloitte, Haskins & Sells</u>, 921 F.2d 959, 963
10 (9th Cir. 1990)). Techsavies cannot defeat summary judgment
11 by relying on conclusory statements or allegations in its
12 complaint. <u>Hernandez v. Spacelabs Med. Inc.</u>, 343 F.3d 1107,
13 1112 (9th Cir. 2003). But WDFA is wrong when it argues that
14 the requirement for "some evidence" is not met if Techsavies
15 relies solely on self-serving deposition testimony. Reply at
16 1; 14-15. It has "long [been] held that a plaintiff may
17 defeat summary judgment with his or her own deposition." <u>Paz</u>
18 <u>v. Wauconda Healthcare & Rehab. Centre, LLC</u>, 464 F.3d 659,
19 664-65 (7th Cir. 2006); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477
20 U.S. 317, 324 (1986) (the nonmoving party is required "to go
21 beyond the pleadings and by her own affidavits, *or by the*
22 *depositions*, answers to interrogatories, and admissions on
23 file, designate specific facts showing that there is a genuine
24 issue for trial") (emphasis added and internal quotations
25 omitted).
26     This rule permitting a party's own deposition testimony
27 to defeat summary judgment recognizes that courts cannot make
28 credibility determinations or weigh conflicting evidence at

1  the summary judgment stage.  See T.W. Elec. Serv. v. Pacific
2  Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir.
3  1987)(citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
4  Corp., 475 U.S. 574, 586 (1986)).  These duties are reserved
5  for the trier of fact.  Id.  Courts are instead required to
6  believe the nonmoving party on summary judgment, and view the
7  evidence in a light most favorable to that party.  Id.

8       In arguing against Techsavies' use of self-serving
9  deposition testimony, WDFA incorrectly relies on Kennedy v.
10 Applause, Inc. 90 F.3d 1477 (9th Cir. 1996).  In Kennedy, the
11 plaintiff testified at her deposition that she was not totally
12 disabled.  Id. at 1481.  This directly contradicted
13 plaintiff's earlier representations on disability claim forms
14 that she was totally disabled, as well as the medical evidence
15 in the case.  Id.  Kennedy affirmed summary judgment in
16 defendant's favor because the inconsistencies between
17 plaintiff's deposition testimony and her other statements did
18 not present "a sufficient disagreement to require submission
19 to a jury."  Id.  Kennedy's limited holding,[3] however, does
20 not help WDFA since it has not presented any evidence that
21 Conner and Hajjoubi's deposition testimony directly
22 contradicted their previous statements.  See Jones v. Tozzi,
23 2007 WL 433116 at *11 (E.D. Cal. 2007).
24 ///

25 ─────────────
26 [3]  Kennedy's holding merely allows courts to disregard self-serving affidavits that are contradicted by plaintiffs' own prior statements and other types of undisputed evidence.
27 See Jones v. Tozzi, 2007 WL 433116 at *11 (E.D. Cal. 2007).
   Thus, "Kennedy is far from a blanket prohibition against
28 considering all affidavits that are self-serving."  Id.

**B. TECHSAVIES' CLAIMS AGAINST WDFA**

   I.   Breach of Contract Claim

WDFA's argument against Techsavies' breach of contract claim exemplifies how WDFA misapplies the summary judgment standard. Under California Civil Code § 1622, oral contracts are just as valid as written contracts. Nonetheless, WDFA contends that Techsavies "has no evidence of a final agreement" because "the *only* evidence that Techsavies has is the self-serving testimony of its own principals regarding a single oral discussion in October 2006." Motion at 23. As discussed above, Techsavies' own testimony is enough to raise a triable issue regarding whether an oral contract existed and was breached. WDFA also does not provide any authority that an oral agreement cannot be reached in a single discussion between the parties, as Techsavies claims transpired. Both Conner and Hajjoubi testified at their depositions that WDFA offered Techsavies a 60/40 respective split of revenues in exchange for Techsavies developing as well as maintaining the software, and both parties then agreed to these terms.[4] Hajjoubi Depo. at 100-102, 110-12; Conner Depo. at 35-36, 45-46.

WDFA contends that the details of the alleged agreement are too vague to constitute all the essential terms of a finalized contract. Reply at 10. Hajjoubi's testimony,

---

[4] Conner and Hajjoubi's testimony regarding the proposed 60/40 split is not completely uncorroborated. In his declaration, Prasad admits that in his discussions with Techsavies he offered to pay it 40% of the license fees or other revenues from the sale of the software to new customers. Decl. of Prasad, ¶ 11.

5

however, explains that the terms of the agreement were final and "very simple." Hajjoubi Depo. at 100-02. Although Hajjoubi does not explain the contract terms articulately, viewing the evidence in a light most favorable to Techsavies, at this juncture, the Court cannot say that a reasonable jury could not conclude that the profits gained from the software's use would be split 60/40, and that the contract terms were clear enough for the parties to understand what each was required to do. Id. at 110-12. Techsavies' obligations were to develop and maintain the software under WDFA's directions, and WDFA was responsible for then selling and managing the use of the software. Hajjoubi Depo. at 101; Conner Depo. at 46. While the parties did not address more specific details regarding the agreement, "it is not necessary that each term of an oral contract be spelled out in minute detail." Gold Seal Productions v. R. K. O. Radio Pictures, 134 Cal.App.2d 843, 861 (1955).

Based on the above, this matter is the quintessential "he said, she said" dispute that is not appropriate for summary judgment. See Jones v. Tozzi, 2007 WL 433116 at *11 (E.D. Cal. 2007). WDFA points out that some of Techsavies' conduct after the agreement was supposedly reached shows that there was never a contract between the parties. But WDFA will have the opportunity to present this evidence to the jury, which can properly evaluate the credibility of all witnesses and weigh the conflicting evidence — something that this Court cannot do — and determine whether an agreement was finalized between the parties. Because a reasonable juror might believe

6

1 Conner or Hajjoubi and find in Techsavies' favor, granting
2 judgment as a matter of law is inappropriate. WDFA's motion
3 on this claim is therefore denied.

4     II.    <u>Partnership Claim</u>

5     California courts analyze claims for breach of
6 partnership and breach of joint venture essentially in the
7 same manner. <u>Bank of Cal. v. Connolly</u>, 36 Cal.App.3d 350, 364
8 (1973); <u>see also</u> <u>People v. Park</u>, 87 Cal.App.3d 550, 564
9 (1978). To establish its partnership claim, Techsavies must
10 show that it reached an agreement with WDFA in which the
11 parties had a joint interest in a common business undertaking,
12 an understanding as to the sharing of profits and losses, and
13 a right of joint control. <u>Id.</u>; <u>see also</u> <u>Hupfeld v. Wadley</u>, 89
14 Cal.App.2d 171, 174 (1948) (plaintiff may obtain relief based
15 on breach of a joint venture even though plaintiff's complaint
16 alleged a partnership). As with contracts, in California a
17 partnership or joint venture agreement does not need to be in
18 writing to be binding. <u>Weiner v. Fleischman</u>, 54 Cal.3d 476,
19 490 (1991). The question of whether "a partnership or joint
20 venture exists is primarily a factual question to be
21 determined by the trier of fact from the evidence and
22 inferences to be drawn therefrom." <u>Connolly</u>, 36 Cal.App.3d.
23 at 364.

24     The analysis of the partnership claim is similar to the
25 analysis of the breach of contract claim. Both Conner and
26 Hajjoubi testified that the parties entered into a partnership
27 agreement to develop and sell the software that Prasad
28 envisioned would lead to a profitable business. Hajjoubi

7

1  Depo. at 100-02; Conner Depo. at 45-46. The parties delegated
2  the management and control of this venture so that Techsavies,
3  working at the direction of WDFA, would develop and manage the
4  software while WDFA would be responsible for selling the
5  software and operating the marketing aspect of the business.
6  Id. Such a delegation of responsibilities is acceptable under
7  a partnership or joint venture agreement. See Scottsdale Ins.
8  Co. v. Essex Ins. Co., 98 Cal.App.4th 86, 93 (2002); Holmes v.
9  Lerner, 74 Cal.App.4th 442, 458 (1999) ("there is nothing
10 unusual about a partnership in which one party supplies an
11 idea which the other party brings into substantive form").

12     Conner and Hajjoubi also claim — and have so testified
13 at depositions — that there was an understanding regarding
14 the sharing of profits and losses with respect to the parties'
15 common undertaking. Hajjoubi Depo. at 110-12; Conner Depo. at
16 45-49. Viewing the submitted deposition testimony in a light
17 most favorable to Techsavies, the profit sharing plan may be
18 interpreted by a reasonable jury to be an agreement between
19 the two parties to share the profits after certain expenses
20 were accounted for.[5] See Hajjoubi Depo. at 110-12. As
21 further proof that there is a genuine dispute regarding this
22 issue, Prasad admits that he had discussions with Conner and

---

[5] WDFA contends that the alleged 60/40 profit sharing agreement, which it claims was illogical, vague, and never applied by the parties, does not constitute a valid agreement to share profits and losses. Motion at 21. But Techsavies only has to show there was an understanding that profits and losses would be shared, to which Conner and Hajjoubi have testified. The actual sharing of profits is not an indispensable element of a partnership, but evidence that may be considered when determining if a partnership exists. Holmes, 74 Cal.App.4th at 456-57.

8

Hajjoubi about Techsavies receiving 40% of the license fees or other revenues from the sale of the software to new customers. Decl. of Prasad, ¶ 11. As explained earlier, this Court is not persuaded by WDFA's argument that the evidence of the partnership agreement is not sufficient because it is only provided through Conner and Hajjoubi's self-serving deposition testimony. Reply at 14-15. Rather, the evidence introduced by Techsavies regarding the existence of a partnership raises a triable issue of fact that is proper for the jury to evaluate. Consequently, summary judgment is denied on this claim as well.

### III. Copyright Claim

To prevail on its claim of copyright infringement, Techsavies must establish that it owned a copyright to the software, and WDFA infringed that copyright beyond the scope of any license it owned. See MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 517 (9th Cir. 1993). For the purposes of this motion, WDFA concedes that Techsavies owned a copyright to the software. Motion at 14. WDFA instead argues that it had an implied license[6] to use the software, including its source code,[7] in accordance with the Ninth Circuit's holding

---

[6] Although exclusive licenses must be in writing, nonexclusive licenses may be granted orally or by implication. Asset Marketing Sys., Inc., v. Gagnon, 542 F.3d 748, 754 (9th Cir. 2008).

[7] While both parties use the terms "software," "source code," and "website" interchangeably, there is a difference between the terms that is material to determining whether Techsavies granted WDFA an implied license. Techsavies registered two versions of the software, which it calls the "Collateralizer," with the United States Copyright Office. The copyrights specifically protect the software's source code that

9

in Asset Marketing Sys., Inc., v. Gagnon. 542 F.3d 748 (9th Cir. 2008).

Under the rule in Asset Marketing, WDFA can establish it had an implied license with respect to the copyrighted software if it shows that there is no genuine dispute of material fact regarding the following: (1) WDFA (the licensee) requested the creation of the software; (2) Techsavies (the licensor) created the software and delivered it to WDFA; and (3) Techsavies intended for WDFA to use, retain, and modify the software. Id. at 754-55. There is no dispute that WDFA asked Techsavies to create the software. Opposition at 10. Moreover, it is undisputed that the software Techsavies created was used to run WDFA's website www.project632.com. The parties, however, disagree on whether Techsavies delivered the software and intended for WDFA to have a license to use the software, particularly its source code.

In Asset Marketing, the Ninth Circuit held that the element of delivery was satisfied when the licensor stored the source code of the copyrighted work on the licensee's computers. 542 F.3d at 755-56. But this did not happen here — WDFA concedes that Techsavies has always maintained control of the source code on its own computers. Prasad Depo. at 75-76. Accordingly, under Ninth Circuit precedent, the delivery element for an implied license has not been met. WDFA, however, urges this Court to follow the holdings of other

---

is not available in the public domain. It is this protected source code that WDFA was not allowed to access — and not the public website — that is the basis of Techsavies' copyright infringement claim.

10

1  district courts. Reply at 4. There is dicta in these cases
2  that the delivery element was satisfied when the website was
3  launched. See Holtzbrinck Publ'n Holdings, L.P. v. Vyne
4  Commc'ns, Inc., 2000 WL 502860 at *4 (S.D.N.Y. 2000); Attig v.
5  DRG, Inc., 2005 WL 730681 at *5 (E.D.Pa. 2005). These cases,
6  which are not from the Ninth Circuit, contain little analysis
7  regarding delivery and are factually distinguishable.[8]
8  Regardless, a ruling on this issue is not necessary for the
9  purposes of this motion. This is because WDFA cannot
10 establish the third element under the Asset Marketing test
11 since there is a genuine dispute regarding whether Techsavies
12 intended to grant WDFA an implied license to use the source
13 code.

14    In evaluating this intent factor, the Court examines
15 Techsavies' "objective intent at the time of the creation and
16 delivery of the software as manifested by the parties'
17 conduct." 542 F.3d at 756. Here, both Conner and Hajjoubi
18 have submitted declarations that they never intended to grant
19 an implied license to WDFA to use the source code. Decl. of
20 Hajjoubi ¶¶ 4-5; Decl. of Conner ¶¶ 4-5. Conner and Hajjoubi
21 corroborate their subjective intent by introducing objective

---

[8] In Holtzbrinck, the licensor had given the licensee password access to the licensor's computer which enabled the licensee to transfer the copyrighted material. 2000 WL 502860 at *2. Attig found that defendant had an implied license to use its own website, which included material that plaintiff developed and copyrighted while working on them. Here the issue is not whether WDFA had an implied license to use the website Techsavies created, but whether it had an implied license to use Techsavies' source code to create its own website. Had WDFA sued Techsavies for access to the website when Techsavies threatened to shut down the website, the result might have been different. 2005 WL 730681 at *5.

11

| | |
|---|---|
| 1 | evidence of their conduct that suggests they did not intend to |
| 2 | grant an implied license.  They presented evidence that |
| 3 | Techsavies always maintained exclusive control over the |
| 4 | software's source code, and never permitted WDFA to have any |
| 5 | access to the code.  Prasad Depo. at 75-76.  Prasad admits |
| 6 | that Techsavies was so adamant about maintaining sole control |
| 7 | of the source code that it required WDFA to provide images of |
| 8 | changes that needed to be made to the software, and Techsavies |
| 9 | would then alter the source code from these images.  Prasad |
| 10 | Depo. at 79-83. |
| 11 | Not permitting WDFA to have any access to the source code |
| 12 | evidenced Techsavies' intent to deny WDFA a license to the |
| 13 | source code.  WDFA admits that in 2009 it hired computer |
| 14 | programmers to write a new version of the software source code |
| 15 | so WDFA may have full access to it.  Decl. of Prasad, ¶ 26. |
| 16 | Based on these undisputed facts, this Court cannot find as a |
| 17 | matter of law that Techsavies intended to grant WDFA an |
| 18 | implied license to the software and its source code.  Even if |
| 19 | this Court found that there was an implied license, a genuine |
| 20 | dispute remains regarding whether WDFA exceeded the scope of |
| 21 | this license by hiring programmers to gain full control of the |
| 22 | copyrighted source code.  Summary judgment is therefore denied |
| 23 | with respect to Techsavies' copyright infringement claim. |

```
 1  evidence of their conduct that suggests they did not intend to
 2  grant an implied license.  They presented evidence that
 3  Techsavies always maintained exclusive control over the
 4  software's source code, and never permitted WDFA to have any
 5  access to the code.  Prasad Depo. at 75-76.  Prasad admits
 6  that Techsavies was so adamant about maintaining sole control
 7  of the source code that it required WDFA to provide images of
 8  changes that needed to be made to the software, and Techsavies
 9  would then alter the source code from these images.  Prasad
10  Depo. at 79-83.
11       Not permitting WDFA to have any access to the source code
12  evidenced Techsavies' intent to deny WDFA a license to the
13  source code.  WDFA admits that in 2009 it hired computer
14  programmers to write a new version of the software source code
15  so WDFA may have full access to it.  Decl. of Prasad, ¶ 26.
16  Based on these undisputed facts, this Court cannot find as a
17  matter of law that Techsavies intended to grant WDFA an
18  implied license to the software and its source code.  Even if
19  this Court found that there was an implied license, a genuine
20  dispute remains regarding whether WDFA exceeded the scope of
21  this license by hiring programmers to gain full control of the
22  copyrighted source code.  Summary judgment is therefore denied
23  with respect to Techsavies' copyright infringement claim.
24       IV.   Remaining Claims
25       WDFA also moved for summary judgment on Techsavies'
26  remaining claims: (1) violation of California Business &
27  Professions Code § 17200 (Section 17200); (2) promissory
28  estoppel; and (3) unjust enrichment.  Techsavies opposition
```

evidence of their conduct that suggests they did not intend to grant an implied license.  They presented evidence that Techsavies always maintained exclusive control over the software's source code, and never permitted WDFA to have any access to the code.  Prasad Depo. at 75-76.  Prasad admits that Techsavies was so adamant about maintaining sole control of the source code that it required WDFA to provide images of changes that needed to be made to the software, and Techsavies would then alter the source code from these images.  Prasad Depo. at 79-83.

Not permitting WDFA to have any access to the source code evidenced Techsavies' intent to deny WDFA a license to the source code.  WDFA admits that in 2009 it hired computer programmers to write a new version of the software source code so WDFA may have full access to it.  Decl. of Prasad, ¶ 26. Based on these undisputed facts, this Court cannot find as a matter of law that Techsavies intended to grant WDFA an implied license to the software and its source code.  Even if this Court found that there was an implied license, a genuine dispute remains regarding whether WDFA exceeded the scope of this license by hiring programmers to gain full control of the copyrighted source code.  Summary judgment is therefore denied with respect to Techsavies' copyright infringement claim.

### IV.   Remaining Claims

WDFA also moved for summary judgment on Techsavies' remaining claims: (1) violation of California Business & Professions Code § 17200 (Section 17200); (2) promissory estoppel; and (3) unjust enrichment.  Techsavies opposition

persuasively argued against this part of WDFA's motion, and WDFA did not address Techsavies' arguments or these claims in its reply. This Court therefore finds that judgment as a matter of law is inappropriate for these three claims.

Techsavies' Section 17200 claim alleges that WDFA's conduct in breaching the contract between the two parties also independently violated Section 17200's ban on unfair, unlawful, or deceptive business practices. Because this Court does not grant WDFA summary judgment on the contract claim, Techsavies' Section 17200 claim also withstands summary judgment. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1138, 1152 (9th Cir. 2008) ("breach of a contract may form the predicate for a Section 17200 claim, provided it also constitutes conduct that is unlawful, or unfair, or fraudulent").

Summary judgment is also inappropriate for Techsavies' promissory estoppel claim. Techsavies pleads this claim as an alternative theory of liability in case the jury finds that there was no contract between the parties. This is permissible. See MZ Ventures, LLC v. Mitsubishi Motor Sales of Am., Inc., 1999 WL 33597219 at *11 (C.D. Cal. 1999).

Lastly, WDFA contends that Techsavies already received more than $450,000 for its services and is consequently not the victim of any injustice to warrant an unjust enrichment claim. Motion at 25. There is, however, a genuine dispute regarding whether WDFA was unjustly enriched considering the evidence introduced by Techsavies that it spent between 7,800 to 9,610 hours working on the software and should have been

13

1 | paid between $2.3 to $2.9 million for this work.  Opposition
2 | at Ex. 14.  Conner and Hajjoubi also testified that much of
3 | the amount it billed WDFA was for maintenance.  Hajjoubi Depo.
4 | at 82-83.  Accordingly, summary judgment is **DENIED** on this
5 | claim as well.
6 |     For the foregoing reasons, defendant's summary judgment
7 | motion is **DENIED** in its entirety.
8 | Dated: February 10, 2011

Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\TECHSAVIES V. WDFA MKTG\ORDER DENYING DEFENDANT'S SUMMARY JUDGMENT MOTION.FINAL VERSION AFTER HEARING(1).wpd

14