1   CROWELL & MORING LLP
    J. Daniel Sharp (CSB No. 131042, dsharp@crowell.com)
2   Anne W. Kuykendall (CSB No. 248720, akuykendall@crowell.com)
    275 Battery Street, 23rd Floor
3   San Francisco, CA  94111
    Telephone: 415.986.2800
4   Facsimile: 415.986.2827

5   Attorneys for Defendant WDFA MARKETING, INC.

6

7

8                      UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12   TECHSAVIES, LLC,                    Case No. CV-10-1213-BZ

13              Plaintiff,               **DEFENDANT WDFA MARKETING,
                                         INC.'S OPPOSITION TO PLAINTIFF
14        v.                             TECHSAVIES, LLC'S MOTION FOR
                                         JUDGMENT ON THE PLEADINGS
15   WDFA MARKETING, INC.,               AND/OR SUMMARY JUDGMENT**

16              Defendant.               Date:        Wednesday, March 16, 2011
                                         Time:        10:00 a.m.
17                                       Courtroom:   G, 15th Floor
                                         Trial Date:  May 16, 2011
18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTS ....................................................................................................................... 2

III.    LEGAL STANDARD ................................................................................................ 5

        A.      Judgment on the Pleadings.......................................................................... 5

        B.      Summary Judgment...................................................................................... 6

IV.     ARGUMENT ............................................................................................................. 7

        A.      WDFA Alleged Facts Sufficient to Show Copyright Misuse ................................ 7

        B.      Techsavies Is Not Entitled to Judgment on the Affirmative Defense of
                Waiver ............................................................................................................ 8

        C.      Techsavies Is Not Entitled to Judgment on the Affirmative Defense of
                Estoppel ......................................................................................................... 8

        D.      WDFA and Techsavies Contributed Independently Copyrightable Material
                to a Joint Work .............................................................................................. 9

                1.      The Website www.project632.com Is a Joint Work to which WDFA
                        Contributed Copyrightable Material ............................................... 9

                2.      Even if the Joint Work Were the Computer Code for
                        www.project632.com, WDFA is a Joint Author.................................... 12

                3.      The Facts Cited by Techsavies Are Largely Irrelevant to Joint
                        Authorship, and in Any Event, Are In Dispute ....................................... 14

                4.      None of the Cases Cited by Techsavies Hold That to Be Joint
                        Author of Code, One Must Write Code That Is Copied, Verbatim,
                        Into the Final Code ........................................................................... 15

        E.      WDFA Has Properly Pleaded Breach of Contract, and There Are Genuine
                Issues of Material Fact Regarding That Claim ..................................................... 16

        F.      Techsavies Is Not Entitled to Judgment on WDFA's Fraud Claim ...................... 19

        G.      WDFA Can Establish Intentional Interference With Contractual Relations
                and Intentional Interference with Prospective Economic Advantage .................. 21

V. CONCLUSION ................................................................................................................... 23

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-i-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,*
    98 F. Supp. 1237(N.D. Cal. 1997 ............................................................. 6

*Alcatel USA, Inc. v. DGI Techs., Inc.,* 166 F.3d 772 (5th Cir. 1999) ................. 6

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ...................................... 6

*Ascon Prop., Inc. v. Mobil Oil Co.,* 866 F.2d 1149 (9th Cir. 1989) .................... 5

*Ashton-Tate Corp. v. Ross,* 916 F.2d 516 (9th Cir. 2000) ......................... 9, 14

*Assessment Tech. of WI, LLC v. Wiredata Inc.,*
    350 F. 3d 640 (7th Cir. 2003) ................................................................ 7

*Bardis v. Oates,* 119 Cal. App. 4th 1 (2004) .................................................... 17

*Bradford v. Commissioner,* 796 F.2d 303 (9th Cir. 1986) ................................ 20

*Celotex Corp. v. Catret,* 477 U.S. 317 (1986) ................................................... 6

*Childress v. Taylor,* 945 F.2d 500 (2d Cir. 1991) ...................................... 10, 11

*Clark v. Capital Credit & Collection Servs.,* 460 F.3d 1162 (9th Cir.2006) ...... 8

*Crestline Mobile Homes Mfg. Co. v. Pacific Finance Corp.,*
    54 Cal.2d 773 (1960) ............................................................................ 9

*Del Madera Properties v. Rhodes & Gardner, Inc.,* 820 F.2d 973 (9th Cir. 1987) ........... 8, 9

*Durkin v. Shields,* 1997 WL 808651 (S.D. Cal. June 5, 1997) ........................... 5

*Edwards v. Arthur Anderson LLP,* 44 Cal.4th 937 (2008) ................................. 8

*Effects Assocs., Inc. v. Cohen,* 908 F.2d 555 (9th Cir. 1990) .......................... 17

*Enron Oil Trading & Transp. Co v. Walbrook Ins. Co., Ltd.,*
    132 F.3d 526 (9th Cir. 1997) .............................................................. 1, 5

*Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co.,*
    375 F.3d 168 (2d Cir. 2004) ................................................................ 16

*Fajardo v. County of L.A.,* 179 F.3d 698 (9th Cir.1999) .................................... 5

*Foad v. Consulting Group, Inc. v. Musil Govan Azzalino,*
    270 F.3d 821 (9th Cir. 2001) .............................................................. 18

*Gherman v. Colburn,* 72 Cal.App.3d 544, 564-565 (1977) ............................. 17

*Genentech, Inc. v. Abbott Labs.,* 127 F.R.D. 529 (N.D. Cal. 1989) ................... 6

*Hal Roach Studios, Inc. v. Richard Feiner and Company, Inc.,*
    896 F.2d 1542 (9th Cir. 1990) ......................................................... 2, 6, 18

*Howey v. United States,* 481 F.2d 1187 (9th Cir. 1973) ..................................... 5

*In re Lee,* 179 B.R. 149 (9th Cir. BAP 1995) .................................................. 16

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-ii-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

*Johnson v. Goldberg*, 130 Cal. App. 2d 571 (1955) ................................................................ 19

*Jordan v. Paul Financil, LLC*, 2010 WL 2892261 (N.D. Cal. Sept. 30, 2010) ........................... 18

*Korea Supply Co. v. Lockheed Martin Corp.*, 131 Cal. 4th 1134 (2003) .................................... 20

*Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390 (2000) ............................. 19

*Kwai Fun Wong v. United States*, 373 F.3d 952 (9th Cir. 2004) ................................................. 5

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ................................ 5

*Mostowy v. United States*, 966 F.2d 668 (4th Cir. 1992) ............................................................ 5

*Paz Wauconda Healthcare & Rehab. Centre, LLC*,
    464 F.3d 659 (7th Cir. 2006) ................................................................................................ 6

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118 (1990) ............................... 21

*Pension Trust Fund for Operating Engineers v. Fed. Ins. Co.*,
    307 F.3d 944 (9th Cir. 2002) ............................................................................................... 16

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n.*, 121 F.3d 516 (9th Cir. 1997) ...................... 6, 7

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008) .......................... 9

*SEC v. Lee*, 720 F. Supp. 2d 305 (S.D.N.Y. 2010) .................................................................. 16

*Service by Medallion, Inc. v. Clorox Co*, 44 Cal.App.4th 1807 (1996) .................................... 16

*SOS v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ................................................................ 14

*Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115 (9th Cir. 1999) ............................... 8

*United States v. City of Redwood City*, 640 F.2d 963 (9th Cir. 1980) ......................................... 5

*Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 774 (9th Cir. 1989) ............................... 16-17

*Video Pipeline v. Buena Vista Home Entertainment*, 342 F.3d 191 (3d Cir. 2003) ..................... 6

*Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 609 F. Supp. 1307 (3d Civ. 1996)........... 14, 15

**STATUTES**

17 U.S.C. § 101 .................................................................................................................. 9, 10

17 U.S.C. § 204 ................................................................................................................. 16-17

Cal. Civ. Code § 1710(4) ....................................................................................................... 19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a).............................................................................................................. 6

S. Rep. No. 94-473 (1975) ................................................................................................. 9, 10

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iii-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1   **I.    INTRODUCTION**

2          On the last possible day permitted by the Scheduling Order, Plaintiff Techsavies, LLC

3   ("Techsavies") has filed this motion for judgment on the pleadings and/or summary judgment,

4   raising technical pleading arguments in an attempt to prevent a jury from hearing WDFA's

5   defenses and counterclaims.  In doing so, Techsavies presents the narrowest possible

6   interpretation of WDFA's pleadings, ignoring the well-established requirement that a judgment

7   on the pleadings may only be granted if it appears "beyond doubt" that WDFA can prove no set

8   of facts in support of its claim.  *Enron Oil Trading & Transp. Co v. Walbrook Ins. Co., Ltd.*, 132

9   F.3d 526, 529 (9th Cir. 1997).  Furthermore, if any deficiency in WDFA's Answer or

10  Counterclaim were detected, the court should grant leave to amend with "extreme liberality,"

11  given the policy that cases should be decided on the merits, not based on technical pleading

12  standards.  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

13         The Court should deny this motion.  It is dilatory.  Techsavies has been provided the

14  opportunity to take discovery from WDFA, and it is abundantly clear that there is ample evidence

15  raising triable issues of fact on all WDFA's claims and defenses.  In 2006, Techsavies agreed to

16  work collaboratively with WDFA to launch WDFA's website and to provide WDFA with all

17  related intellectual property rights.  WDFA paid Techsavies over $450,000 pursuant to this

18  arrangement.  What WDFA received in return was ever-increasing demands for money, threats to

19  shut down the website, the loss of WDFA's proprietary customer database, and disruption of

20  WDFA's advertising business.  As a result, WDFA was forced to incur the cost of replacing the

21  website, suffered harm to its relationship with its clients, and lost tens of thousands of dollars in

22  business.  WDFA has been wronged, and is entitled to present its claims and defenses to a jury.

23  //

24  //

25  //

26  //

27  //

28  //

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-1-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

## II.     FACTS[1]

In 2006, Mr. Prasad and another WDFA employee, Jason Hilton, invented a proprietary system for creating and distributing advertising to metroPCS, a client of WDFA.  (Counterclaim ¶ 6; Prasad Decl. ¶ 5[2].)  Prasad had created screen displays of the graphical user interface that users of the system, which are independently copyrightable works of authorship by Prasad. (Counterclaim ¶ 7; Prasad Decl. ¶ 5.)

In October 2006, Prasad met with Conner and Hajjoubi of Techsavies.  (Counterclaim ¶ 7-8; Prasad Decl. ¶¶ 9-15.)  Prasad proposed, and Techsavies agreed, that  WDFA would pay Techsavies a reasonable fee to prepare the computer code and provide IT services to host the new website, and WDFA would remain the owner of the system, including the computer code prepared by Techsavies to implement the system, with the right to sell or license the system to third parties.  (*Id.*)  Prasad specifically insisted that the copyrights and other intellectual property associated with his invention—including the software being commissioned from Techsavies—would belong to WDFA.  (Counterclaim ¶ 9; Prasad Decl. ¶ 10; *see* Sharp Decl. ¶ 6, Sharp Decl. Ex. 19 [Prasad Depo. 38:7-39:12].)

Although Conner and Hajjoubi agreed to Prasad's terms, they secretly intended "to claim ownership of the system for themselves," and to exploit the arrangement to their own personal advantage.  (Counterclaim ¶¶ 8, 28.)   They behaved consistently with this secret intent.  (Prasad Decl. ¶¶ 19-34.)

For a while, all went well.  Techsavies requested and received HTML code from WDFA, in addition to PowerPoint slides, PhotoShop files, website flow charts, text, images, and hand-written comments on webpage printouts.  (Counterclaim ¶ 7; Prasad Decl. ¶ 16; Hilton Decl. ¶¶ 4-

---

[1] Since this is a motion for Judgment on the Pleadings, the allegations of WDFA's Answer and Counterclaim are taken as true, and all reasonable inferences are drawn in favor of WDFA. Any contrary allegations are deemed to be false, and no inferences are to be drawn in Techsavies' favor.  *Hal Roach Studios, Inc. v. Richard Feiner and Company, Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (citations omitted).

[2] All references to the Prasad Declaration refer to Docket No. 48, the Declaration of Rajneel Prasad In Support of Motion of Defendant WDFA Marketing, Inc. for Summary Judgment or Partial Summary Judgment, filed on December 29, 2010.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

8.)  Using WDFA's contributions, Techsavies prepared computer code and provided information technology services for the initial launch of the system over the internet for MetroPCS. (Counterclaim ¶ 9; Prasad Decl. 16-18; Hilton Decl. ¶¶ 4-8.)  The parties referred to the project as "project 632," and WDFA caused the domain name www.project632.com to be registered to WDFA.  (*Id.*)  The login page carried a notice stating "Copyright © 2006-2007.  All rights reserved WDFA Marketing."  (Prasad Decl. ¶ 18; Hilton Decl. ¶ 5; Sharp Decl. Ex. 17; Sharp Decl. Ex. 33 [Hajjoubi Depo. 184:25-185:3].)  WDFA asked Conner and Hajjoubi to sign written agreements memorializing the parties' relationship.  (Counterclaim ¶¶ 12, 24; Prasad Decl. ¶¶ 20-23, 27-32.)  Techsavies dragged its feet.  (*Id.*)

Unbeknownst to WDFA, the software for the website had not been written by Techsavies, but had been authored by unknown programmers in India whose work was sent to Techsavies by Ace Website Design.  (Sharp Decl. Ex. ¶ 8, 32.))  In November 2008, Techsavies secretly arranged to have Ace Website Design execute an "Assignment Agreement" assigning to Techsavies the copyright associated with the software for www.project632.com as well as five other websites (including Techsavies' own website), in exchange for having received payment of $48,749.60.  (*Id.*)

In September 2009, Messrs. Conner and Hajjoubi demanded that Techsavies "maintenance fee" be increased to $27,000 a month.  (Counterclaim ¶ 14; Prasad Decl. ¶ 28-30.) In making this demand, Messrs Conner and Hajjoubi claimed that WDFA had no right, title or interest in www.project632.com, notwithstanding the agreement that Messrs Conner and Hajjoubi had struck with Mr. Prasad in October 2006.  (*Id.*)  Messrs. Conner and Hajjoubi threatened that, unless WDFA capitulated to Techsavies' demands, Techsavies would contact WDFA's client, metroPCS, to induce metroPCS to sever its relationship with WDFA and to purchase, lease or license the proprietary system of www.project632.com from Techsavies.  (*Id.*; Sharp Decl. Ex. 35 [Prasad Depo. 248:25-249:12.].)  Messrs. Conner and Hajjoubi also threatened to disclose WDFA's proprietary system to outside parties including Marketing Experts, Software Systems Analysts, and Programmers.  (*Id.*)

CROWELL
& MORING LLP
ATTORNEYS AT LAW

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1     On September 29, 2009, Messrs. Conner and Hajjoubi threatened to shut down

2  www.project632.com unless WDFA agreed to pay Techsavies $400,000 within 15 days, plus a

3  "signing bonus" of $25,000, plus a monthly stipend of $27,000.  (Counterclaim ¶ 15; Prasad Decl.

4  ¶ 29.)  Messrs. Conner and Hajjoubi also repeated their threat to contact metroPCS directly and

5  offer to sell the proprietary system directly to WDFA's client.  (*Id.*)

6     WDFA sought to resolve amicably the dispute raised by Messrs. Conner and Hajjoubi

7  regarding ownership of the intellectual property reflected in www.project632.com and to maintain

8  a business relationship with Techsavies.  (Counterclaim ¶ 16; Prasad Decl. ¶ 24-32)  However,

9  the demands conveyed by Messrs. Conner and Hajjoubi became increasingly exorbitant—

10  including a demand to "sell" the computer code to WDFA for $2 million—and an amicable

11  resolution was impossible.  (*Id.*)

12     In order to avoid controversy, WDFA engaged another computer programmer, Abhishek

13  Banerjee, to write new computer code to implement its proprietary system for creating and

14  distributing advertising to metroPCS.  (Counterclaim ¶ 17; Prasad Decl. ¶ 25-26.)  Mr. Banerjee

15  did not have access to the computer code written by Techsavies to operate the system, which was

16  within the custody and control of Techsavies.  (*Id.*)  WDFA could view only publicly-available

17  HTML code describing the "look" of each page that is rendered by a web-user's browser.  (*Id*; *see*

18  *also* Banerjee Decl. ¶¶ 5, 8.)

19     Techsavies maintained not only its computer code but also all of the data that had been

20  input into the system by metroPCS franchisees who had purchased advertising and marketing

21  materials from WDFA.  (Counterclaim ¶¶ 18, 30-34; Prasad Decl. ¶¶ 24-25.)  Such data had been

22  conveyed in confidence from the metroPCS franchisees to WDFA.  (*Id.*)  In or about September

23  24, 2009, when it had become clear that WDFA and Techsavies would be unable to reach an

24  amicable resolution of their dispute over WDFA's ownership of the system and its right to use the

25  computer code it had purchased from Techsavies, WDFA demanded that Techsavies turn over the

26  data that the metroPCS franchisees had input in the system.  (Counterclaim ¶¶ 18, 30-34; Hilton

27  Decl. ¶¶ 14-16; Sharp Decl. Ex. 35 (Prasad Depo. 213:5- 214:23].)  Techsavies refused to turn

28  over the data, thereby disrupting and interfering in the contractual relationship between WDFA

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1  and metroPCS and its franchisees. (*Id.*) As a result of Techsavies' wrongful interference,

2  WDFA's advertising sales to metroPCS franchisees declined precipitously causing damages in an

3  amount that is the subject of expert testimony. (Counterclaim ¶¶ 18, 30-34; Hilton Decl. ¶¶ 14-

4  16; *see also* Sharp Dec. Exh. 41 [Expert Report of Monica Ip]). Also as a result of Techsavies'

5  wrongful interference, WDFA's current and future contracts with MetroPCS were damaged.

6  (Counterclaim ¶ 18, 31-34; Hilton Decl. ¶¶ 14-16. )

7      Techsavies, on November 20, 2009, sent WDFA an ultimatum stating that Techsavies

8  would "discontinue providing any services to WDFA or operating any website used in connection

9  with the services including www.project632.com" unless WDFA signed an agreement acceptable

10  to Techsavies by December 31, 2009. (Prasad Decl. ¶ 32, Ex. 13.)

11      Faced with this ultimatum, WDFA on November 23, 2009, re-directed the URL

12  http://www.project632.com to a new server hosted by WDFA, rather than the server hosted by

13  Techsavies. (Prasad Decl. ¶ 33.) WDFA began using the new software, which had been created

14  without access to the source code written by Techsavies. (Counterclaim ¶ 17; Prasad Decl. ¶¶ 26,

15  33.)

16  **III.   LEGAL STANDARD**

17      **A.   Judgment on the Pleadings.**

18      A motion for judgment on the pleadings may not be granted unless it is "<u>beyond doubt</u>

19  that the [non-moving party] can prove no set of facts in support of his claim which would entitled

20  him to relief." *Enron Oil Trading & Transp. Co.*, 132 F.3d at 529 (emphasis added); *see also*

21  *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1980).

22      A motion for judgment on the pleadings can only be granted where it appears the moving

23  party is entitled to judgment as a matter of law. *Fajardo v. County of L.A.,* 179 F.3d 698, 699 (9th

24  Cir. 1999). The standard for judgment on the pleadings is "stringent," and the motion must be

25  denied unless it appears "to a certainty" that no relief is possible under any state of facts the

26  Plaintiff could prove in support of its claim. *Mostowy v. United States*, 966 F.2d 668, 672 (4th

27  Cir. 1992); *Durkin v. Shields*, 1997 WL 808651 at *8 (S.D. Cal. June 5, 1997) ("a court must

28  deny a motion for judgment on the pleadings unless it appears 'to a certainty' that no relief is

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-5-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1    possible under any state of facts the plaintiff could prove in support of his claim.").

2       Furthermore, granting judgment on the pleadings without affording Plaintiff an

3    opportunity amend its pleading would contradict the strong policy of allowing amendment and

4    deciding cases on the merits, rather than on technical pleading standards. *Kwai Fun Wong v.*

5    *United States*, 373 F.3d 952, 956-57 (9th Cir. 2004) ("Federal courts may not dismiss a complaint

6    unless 'it is clear that no relief could be granted under any set of facts that could be proved

7    consistent with the allegations.'"); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973)

8    (stating that the purpose of pleadings is to facilitate a proper decision on the merits, not to erect

9    formal impediments to litigation).

10       Accordingly, the court must be very liberal in granting leave to amend a pleading.

11    *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend

12    granted with "extreme liberality"); *Ascon Prop., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th

13    Cir. 1989); *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530 (N.D. Cal. 1989)(citing *DCD*

14    *Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

15       **B.**      **Summary Judgment.**

16       A proceeding must be treated as a motion for summary judgment, not judgment on the

17    pleadings, where the district court considers matters beyond the pleadings in the case. *Hal Roach*

18    *Studios, Inc.*, 896 F.2d at 1550 (citing Fed. R. Civ. P. 12(c); *Bonilla v. Oakland Scavenger Co.*,

19    697 F.2d 1297, 1301 (9th Cir. 1982), *cert. denied* 467 U.S. 1251 (1984)).  Summary judgment is

20    appropriate only where "there is no genuine dispute as to any material fact and the movant is

21    entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment must be

22    denied "if the evidence is such that a reasonable jury could return a verdict for the nonmovant."

23    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On a motion for summary judgment,

24    the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

25    the non-movant's favor. *Id.* at 355.  Deposition testimony and declarations may create issues of

26    fact sufficient to defeat a motion for summary judgment. *Paz Wauconda Healthcare & Rehab.*

27    *Centre, LLC*, 464 F.3d 659, 664-65 (7th Cir. 2006); *Celotex Corp. v. Catret*, 477 U.S. 317, 324

28    (1986).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-6-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

IV.     **ARGUMENT**

A.     **WDFA Alleged Facts Sufficient to Show Copyright Misuse.**

Copyright misuse exists where "the plaintiff is using the right asserted contrary to the public interest." *Video Pipeline v. Buena Vista Home Entertainment*, 342 F.3d 191, 204 (3d Cir. 2003). Specifically, courts have found misuse where the plaintiff attempts to "indirectly gain commercial control over products [Defendant] does not have copyrighted, often constituting anticompetitive business practices. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 793 (5th Cir. 1999); *see also Practice Mgmt. Info. Corp. v. Am. Med. Ass'n.*, 121 F.3d 516, 520 (9th Cir. 1997) (finding copyright misuse where copyright license prohibited licensee from using competing goods).

Techsavies does not dispute that its conduct meets the definition of copyright misuse. Techsavies attempted to use copyright to exert unilateral authority to shut down project632.com, withhold WDFA's customer data, and sell WDFA's proprietary system to its competitors. WDFA alleges in its complaint that Techsavies exploited its alleged authority to (a) extract ever-increasing maintenance fees from WDFA and (b) prevent WDFA from accessing its customer data. As stated by the court in *Assessment Tech. of WI, LLC v. Wiredata Inc.*, 350 F. 3d 640 (7th Cir. 2003):

> This case is about the attempt of a copyright owner to use copyright law to block access to data that not only are neither copyrightable nor copyrighted, but were not created or obtained by the copyright owner. The owner is trying to secrete the data in its copyrighted program—a program the existence of which reduced the likelihood that the data would be retained in a form in which they would have been readily accessible. It would be appalling if such an attempt could succeed.

The court found copyright misuse based upon the fact that "[Plaintiff] is trying to use its copyright to sequester uncopyrightable data, presumably in the hope of extracting a license fee from [Defendant]." *Id*. at 645. Techsavies' behavior constituted copyright misuse, and Techsavies does not contend otherwise on this motion.

The *only* argument that Techsavies offers is that "copyright misuse does not constitute a defense to a breach of contract claim." (Motion at 6:8) WDFA's Answer alleges that "Solely by

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-7-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1   Solely by way of an affirmative defense, not to be construed as an admission, the Complaint for

2   breach of contract is barred, in whole or in part, by the doctrine of copyright misuse." The

3   Answer is concededly ambiguous, as Techsavies filed but one "Complaint" containing six claims

4   for relief, one of which was for breach of contract. Techsavies offers no justification for

5   dismissing the defense of copyright misuse as to the entire Complaint. Copyright misuse, when

6   established, is a defense to copyright infringement. *Practice Mgmt.*, 121 F.3d at 520. The

7   Complaint alleges copyright infringement, and the Answer sets forth facts sufficient to plead

8   copyright misuse as a defense. As such, the defense should not be dismissed.

9     **B.  Techsavies Is Not Entitled to Judgment on the Affirmative Defense of Waiver.**

10    WDFA's Answer and Counterclaim alleges facts sufficient to prove the affirmative

11  defense of waiver.

12    Waiver is "the voluntary relinquishment—express or implied—of a legal right or

13  advantage." *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1170-1171 (9th Cir.

14  2006) "[A] copyright owner who grants a nonexclusive license to use his copyrighted material

15  <u>waives his right to sue the licensee for copyright infringement</u> and can sue only for breach of

16  contract." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121-22 (9th Cir. 1999)

17  (emphasis added; internal quotations marks and citations omitted). The Court has been presented

18  with two summary judgment motions regarding the existence implied license. The same fact

19  support the affirmative defense of waiver: Techsavies agreed that WDFA could have the use of

20  the software, and therefore waived its claim of copyright infringement.

21    To the extent that the court finds that WDFA has not properly pleaded the affirmative

22  defenses of waiver, the Court should grant leave to amend the Answer to correct any deficiencies.

23    **C.  Techsavies Is Not Entitled to Judgment on the Affirmative Defense of Estoppel.**

24    WDFA's Answer and Counterclaim alleges facts sufficient to prove the affirmative

25  defense of estoppel. Estoppel is a recognized defense not only to Plaintiff's state law claims but

26  also to the claim for copyright infringement. *Del Madera Properties v. Rhodes & Gardner, Inc.*,

27  820 F.2d 973, 979 (9th Cir. 1987). Estoppel requires: (1) a representation or concealment of

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-8-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

material facts (2) made with the knowledge, actual or virtual, of the facts (3) to a party ignorant, actually and permissibly, of the truth (4) with the intention, actual or virtual, that the latter act upon it; and (5) the party must have been induced to act upon it. *Id.* fn. 5 (citing 7 B. Witkin, Summary of California Law, Equity § 132, at 5352 (8th ed. 1974 & Supp. 1984) (citations omitted).)  By representing to WDFA that WDFA would own (or at least have permission to use) the software for the www.project632.com website, Techsavies induced WDFA to rely on Techsavies to help launch and operate the website, rather than making alternative arrangements.

Estoppel also applied to Techsavies' partnership and breach of contract claims. Techsavies submitted over 80 invoices to WDFA for payment.  (Sharp Decl. Exs. 30, 31.)  The invoices were representations of the amount of payment due, and were sent without any notice that Techsavies intended to later claim that additional amounts were due based on an alleged oral contract or partnership agreement.  (*Id.*)  A reasonable jury could find that Techsavies is estopped from seeking additional payments over and above the amounts invoiced.  *See Crestline Mobile Homes Mfg. Co. v. Pacific Finance Corp.*, 54 Cal.2d 773 (1960) (seller of mobile home who sent an invoice for payment was barred by estoppel from disputing the sale).

### D.     WDFA and Techsavies Contributed Independently Copyrightable Material to a Joint Work

Techsavies seeks summary judgment, not judgment on the pleadings, regarding WDFA's affirmative defense of joint authorship.  (Pl. Mot., 7:12-14, 8:15-16.)

Section 101 of the Copyright Act defines "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into <u>inseparable or interdependent parts of a unitary whole</u>."  17 U.S.C. §  101 (emphasis added).  The "touchstone" of joint authorship analysis is "<u>the intention, at the time the writing is done, that the parts be absorbed or combined into an integrated unit</u>."  S. Rep. No. 94-473, at 103 (1975) (emphasis added).

#### 1.     The Website www.project632.com Is a Joint Work to which WDFA Contributed Copyrightable Material

"Whether a work is a joint work, rendering a party a joint author, is often a question of fact for the jury to determine."  Ninth Circuit Model Civil Jury Instructions, 17.7, Comment; *see*

*also Del Madera Orios v. Rhodes and Gardner, Inc.* 820 F.2d 973, 980 (9th Cir. 1987) ("Authorship is a question of fact.").  A reasonable jury could easily find that the website www.project632.com is a "unitary whole," comprised web pages containing images and  text, a site plan, and the software necessary to launch the webpages on the Internet according to the site plan.

An author need only contribute a single copyrightable expression to enjoy all the benefits of joint authorship. *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) ("Even if a person's contribution is minor, once he is accorded joint authorship status, he enjoys all benefits of joint authorship").  Techsavies erroneously contends that WDFA made no such contribution to the copyrighted work.  (Pl. Mot. 7:15-24.)  For the website[3], however, WDFA contributed HTML code, website flow plans, screen displays, images, text, sample databases, PowerPoint slides, PhotoShop files, .swf files, text, written comments on web page printouts, and more.  (Prasad Decl. ¶ 16; Hilton Decl. ¶¶ 6-8.)  Each of these items was "reduced to writing."

The website is a unitary whole because the contributions of WDFA and Techsavies, together, are inseparable or interdependent parts of www.project632.com.  *See* 17 U.S.C. §  101.  Parts of a unitary whole are "inseparable" when "they have little or no independent meaning standing alone." *Childress v. Taylor*, 945 F.2d 500, 505 (2d Cir. 1991).  Parts of a unitary whole are "interdependent" when "they have some meaning standing alone but achieve their primary significance because of their combined effect, as is the case of the words and music of a song." *Id.*  Taking Techsavies' contribution first, consider the HTML code, which is the only code allegedly copied by (HTML is the "front end" code available to any visitor to www.project632.com using the web browser's "view source" function).  HTML is not a computer program, but a simple markup language that defines only the information that is conveyed <u>visually</u> when a user looks at the web page on his or her computer screen, such as the background

---

[3] Even if the copyrighted work is defined more narrowly, as the computer code for www.project632.com, WDFA contributed HTML code to the work, as discussed below.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1   color, font size, length and width of tables and boxes, and so forth.  (Banerjee Decl. ¶¶ 4, 7.)  As

2   such, the HTML code contained in Techsavies complaint is absolutely unique to

3   www.project632.com's login and administrator web pages, and for it to be of use to any other

4   website (and therefore have independent commercial value), it would have to be altered. [4]  Indeed,

5   the product would be commercially worthless without WDFA's web interface, since purpose of

6   the project itself was to create an E-Commerce website.  (Prasad Decl. Ex. 2.)  Furthermore,

7   because HTML code's functionality is limited to describing how a web page looks visually, to

8   make use of the HTML code is one and the same with rendering the web page designed by

9   WDFA over www.project632.com.  Similarly, each of WDFA's contributions are specific to

10  www.project632.com and have little or no independent value.  Indeed, that is why WDFA was

11  willing to pay Techsavies in the first place.  Techsavies' and WDFA's contributions have even

12  less independent value than the music and lyrics to a song, and yet a song is a prime example of a

13  joint work of which the two elements are interdependent parts.  *Childress v. Taylor*, 945 F.2d 500,

14  505 (2d Cir. 1991) ("a novel and a song are among the examples offered by the legislative

15  committee reports on the 1976 Copyright Act to illustrate the difference between 'inseparable'

16  and 'interdependent' parts.").

17       Furthermore, a reasonable jury could find that the conduct of the parties evinces an

18  "intention, at the time the writing is done, that the parts be "absorbed or combined into an

19  integrated unit."  Comment to S. Rep. No. 94-473, at 103 (1975) (emphasis added).  First, the

20  evidence shows that Techsavies knew, from the beginning, that the entire purpose of the

21  computer code that it was hired to write was to put WDFA's pre-designed web site up on the web.

22  (Prasad Decl. Ex. 2 [October 13, 2006 Proposal for "an E-Commerce website"].)  Second, as

23  described in more detail below, Techsavies requested and received HTML code from WDFA as a

24  necessary element of creating the website, demonstrating its intent to integrate it into the final

25  work.  Third, Techsavies told Mr. Prasad that he would remain the owner of the web-based

26

27       [4] Certainly, the code could have been changed to run a different website; as written and
    copyrighted, however, the code is unique to www.project632.com.

28

Crowell
& Moring LLP
Attorneys At Law

-11-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1   system, indicating Techsavies' intent that the two parties' work would merge into a single product

2   of which they would both be joint authors.  (Prasad Decl. ¶ 15.)  Fourth, at the time of writing the

3   Code, Ace Website design on behalf of Techsavies indicated that the "Collateralizer" was

4   intertwined with WDFA and www.project632.com.  The pages of code sent to the copyright

5   office with Techsavies' application (approximately 70 pages) contain at least 28 references to

6   project632, and at least 39 references to WDFA Marketing, including "Content =

7   'wdfamarketing.com, WDFA Marketing is about successful campaigns, meeting deadlines,

8   treating people well, and working hard. . .'" (*See* Sharp Decl. Ex. 39.)  Finally, WDFA both

9   intended its contributions to be integrated into the site and directed Techsavies to integrate them;

10  WDFA's changes were in fact integrated into the site (indeed, Techsavies had no discretion to

11  refuse WDFA's direction).  (Hilton Decl. ¶¶ 4, 8.)

12      Finally, granting Techsavies sole authorship of the code would defeat the very purpose of

13  the joint authorship doctrine.  It is well-established that copyrightable works—like

14  www.project632.com—can be composites of multiple copyrightable elements (e.g. screen

15  displays, text, images, and computer code).  *See, e.g., Childress v. Taylor*, 945 F.2d at 505.  To

16  allow an author of one component part of a creative work to separate out his contribution from the

17  whole and assert exclusive control over that part thwarts the aim of the joint work doctrine:

18  granting co-authors of a "unitary whole" equal rights to the copyrighted work.  WDFA is a joint

19  author of the website.  However, to prevent WDFA from using the HTML code is to prevent

20  WDFA from using the website, very thing of which it is an author.  This result would strip

21  WDFA of its rights as a copyright holder in www.project632.com.

## 2.      Even if the Joint Work Were the Computer Code for www.project632.com, WDFA is a Joint Author.

23      Even framing the joint work more restrictively, as the computer code for

24  www.project632.com, WDFA made numerous copyrightable contributions that were absorbed

25  into a "unitary whole."

26      The testimony and documentary evidence shows that the Techsavies requested and

27  received HTML files and images from WDFA as necessary to write the code for

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1   www.project632.com.  This is in addition to the PowerPoint presentations, website flow charts,

2   .swf files, and more that also constitute copyrightable contributions to the computer code.

3          Mr. Prasad and Mr. Hilton both testified that WDFA provided Techsavies with HTML

4   code for use in creating the website.  Mr. Prasad states, "We created a PowerPoint presentation,

5   mock-ups of the web pages, HTML files, images, and text for the website.  WDFA exercised

6   complete control over the project.  In addition, WDFA employees could and did make changes to

7   the website on the development server using Conner's personal password."  (Prasad Decl. ¶¶ 10,

8   16.)  Mr. Hilton states, "In the months before the website went live, Hajjoubi repeatedly asked me

9   for HTML code for www.project632.com so he could begin coding the website.  He told me he

10  "needed" the HTML code from WDFA. . . On March 22, 2007, I sent Mr. Hajjoubi the requested

11  HTML code via e-mail. . ." (Hilton Decl. ¶¶ 6-7.)

12         Techsavies' own documents and e-mails make clear that, from the beginning, Techsavies

13  needed WDFA's HTML code to begin its work on the website.  Techsavies' October 13, 2006

14  proposal to Mr. Prasad states that Techsavies will provide "An E-Commerce website to be

15  developed for WDFA Marketing for complete automation of order process along with following

16  site links and existing layout which is currently is [sic] used by the site owner."  (Prasad Decl. Ex.

17  2 at TS 00000769 (emphasis added).)  It clarifies, "[T]he final website layout HTML will be

18  provided by the client," and "Design Layout (HTML) will be provided by the client."  (Id. at TS

19  00000769, TS 00000777.)  Hajjoubi later provided a project timeline to WDFA stating, "we are

20  expecting the HTML design from you so we can Transform the code to PHP."  (Hilton Decl. Ex.

21  16.)

22         In March, 2007, Mr. Hajjoubi started more urgently to press Mr. Hilton for the HTML

23  files.  On March, 5, 2007, he wrote, "I need the HTML files so I can start translating them into

24  PHP."  (Hilton Decl. Ex. 17 (emphasis added).)  Also on March 5, 2007, he wrote to Mr. Prasad,

25  stating, ". . . I also need the HTML pages that you included in your power point presentation."

26  (Sharp Decl. Ex. 42 (emphasis added).)  When Mr. Prasad said he had not built the HTML files

27  yet, Mr. Hajjoubi responded, "I will need those as soon as you can.  No rush but [the HTML files]

28  are the starting point."  (Sharp Decl. Ex. 42.)

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-13-

SFACTIVE-902250187.4

1  In response to Techsavies' repeated requests, on March 12, 2007 Mr. Hilton responded, "I

2  know you need the HTML coding . . . " (Hilton Decl. Ex. 18.)  One day later, on March 13, he

3  reiterated, "I'll get those HTML codes for you." (Hilton Decl. Ex. 19.)

4  On March 22, 2007, Mr. Hilton wrote an e-mail to Hajjoubi entitled "HTML Code." He

5  wrote, "HTML coding is done – see the below link." (Hilton Decl. Ex. 20 (emphasis added).)

6  Mr. Prasad has corroborated this under oath, stating, "I believe Jason Hilton sent an email to

7  Techsavies indicating that WDFA had written HTML code and that the code was available to

8  Techsavies . . ." (Sharp Decl. Ex. 38[5].)

9  The evidence shows that Techsavies "needed" HTML code from WDFA, and the WDFA

10  provided Techsavies with the code that it needed.  Techsavies had no reason to request the code,

11  and WDFA had no reason to send it, other than the parties' intention that the code be absorbed

12  into the final, joint work.

13  This HTML code is in addition to the PowerPoint slides, PhotoShop files, text, website

14  flow charts, proprietary images, and handwritten comments that WDFA gave to Techsavies.  The

15  evidence squarely contradicts Techsavies' contention that WDFA contributed nothing more than

16  "design ideas" to the code.  (Pl. Mot. 8:10-11.)

17  ### 3.  The Facts Cited by Techsavies Are Largely Irrelevant to Joint Authorship, and in Any Event, Are In Dispute.

18  The facts cited by Techsavies in support of its claim that WDFA made no contribution to

19  the joint work are inapposite and disputed.  First, whether or not the code was ultimately stored

20  on a server owned by Techsavies is irrelevant to the question of each party's contribution to the

21  code.  Second, the code was not stored on Techsavies server "because it did not want WDFA

22  employees making any modifications to the code." (Pl. Mot 7:26-8:1.)  This characterization is

23  not true to the evidence or to the testimony that they cite from Mr. Prasad's deposition.  The code

24  was initially stored on Techsavies' server at WDFA's request as a convenience to WDFA.  (Sharp

25  

26  _____

27  [5] Techsavies misleads the court by citing to the uncorrected version of Mr. Prasad's deposition and failing to mention that it received relevant corrections to the deposition. (Sharp Decl. Ex. 38.)

28  

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-14-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1  Decl. Ex. 38 [Prasad Depo. 73:15-74:9]; Prasad Decl. Ex. 2 at TS000769; Hilton Decl. ¶ 3.)

2  WDFA agreed that not all WDFA employees should have access to the code because of the

3  possibility that WDFA's graphic designers might unintentionally "screw something up with the

4  system," not to prevent WDFA as a whole from making "any modifications."  (Lin Decl. Ex. 5

5  [Prasad Depo. 73:15-74:9].)  Wanting to prevent WDFA from making changes to the site (and

6  therefore to the HTML code) is inconsistent with providing WDFA with the username and

7  password to access the website's server and the control panel.  (Prasad Decl. ¶¶ 10, 16; Hilton

8  Decl. ¶¶ 9, 10.)  WDFA did, after all, pay for the very server that Techsavies claims it had

9  exclusive authority over.  (Hilton Decl. ¶ 11.)  As stated above, Techsavies' characterization of

10  Mr. Prasad's deposition testimony knowingly mischaracterizes the record in light of Mr. Prasad's

11  corrections to his testimony (whether the jury chooses to credit his initial or corrected testimony

12  is within their purview).  And finally, while WDFA has not identified specific lines of The

13  Collateralizer written by WDFA, it has never been asked to do so.

14          **4.**      **None of the Cases Cited by Techsavies Hold That to Be Joint Author of Code, One Must Write Code That Is Copied, Verbatim, Into the Final Code.**

15

16        None of the cases cited by Techsavies holds that to be a joint author of software, a person

17  must independently compose computer code that is integrated, verbatim, into the final code.

18  Rather, each holds only that to be a joint author, a person's contribution must be copyrightable.

19  None speak to the question of how that expression is "integrated" or "absorbed" into the final

20  work.  Techsavies includes no quotations or detailed factual discussion from these cases because

21  neither favors Techsavies' strong, inaccurate statement of the law.

22        *SOS v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) concerned joint authorship of custom

23  payroll software.  There, Defendant "did nothing more than describe the sort of programs Payday

24  wanted S.O.S. to write."  *Id.* at 1087.  As such, she had reduced none of her ideas to fixed,

25  tangible expression, and could not be an "author."  *Id.*  Similarly, in *Whelan Assocs., Inc. v.*

26  *Jaslow Dental Lab., Inc.*, 609 F. Supp. 1307, 1318, the purported author "did little more than

27  explain the operations of the dental laboratory business and define the information he wanted to

28  be able to obtain from the computer."  The court found that "general assistance and contributions

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-15-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1   to the fund of knowledge of the author did not make [the purported author] a creator of any

2   original work. . .” *Id.*  Similarly, *Ashton-Tate Corp. v. Ross*, 916 F.2d 516 (1990), the defendant

3   offered only “ideas and guidance for the user interface” and an uncopyrightable list of possible

4   user commands.  *Id.* at 521-22.

5          Here, WDFA contributed very detailed, specific designs, flow charts, and mockups that

6   were, in fact, absorbed into the computer code and the website.  (Prasad Decl. ¶ 16; Hilton Decl.

7   ¶¶ 4, 6-8.)  In programming terms, WDFA contributed not only the “what” of the Collateralizer,

8   but a detailed description of “how” those functions should be expressed.

9          **E.     WDFA Has Properly Pleaded Breach of Contract, and There Are Genuine
                     Issues of Material Fact Regarding That Claim.**

10         WDFA properly alleges each of the elements required to show breach of contract, and the

11  evidence on record supports those theories.   The elements of a claim for breach of contract are

12  “(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

13  breach, and (4) damage to plaintiff therefrom.”  *Regan Roofing Co. v. Superior Court,* 24

14  Cal.App.4th 425, 434-435 (1994) (citing Witkin, Cal. Procedure, Pleading, § 464, p. 504 (9th ed.

15  1987).)  Paragraphs 21 and 22 of the Counterclaim set forth WDFA’s contract theory:

16

17              In or about October 2006, WDFA and Techsavies entered into an
                oral contract whereby, among other things, WDFA would pay
18              Techsavies a reasonable fee, estimated to be approximately $30,000
                to prepare the computer code and provide information technology
19              services necessary to implement a proprietary system for metroPCS
                that had been invented by Raj Prasad and Jason Hilton, and WDFA
20              would remain the owner of the system, including the computer code
                prepared by Techsavies to implement the system, with the right to
21              sell or license the system to third parties.

22              The contract between the parties contained an implied covenant of
                good faith and fair dealing, whereby each party was obligated to
23              take reasonable steps to achieve the purposes of the contract.

24  (Counterclaim ¶¶ 21, 22.)  The Counterclaim alleges that Techsavies breached the contract, and

25  that “WDFA has been damaged by disruption of its services to metroPCS and the loss of

26  advertising sales to metroPCS, and by incurring the cost of preparing substitute computer code for

27  its system, and in other ways that will be subject to proof at trial. “  (*Id.* ¶¶ 23-26.)

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-16-

WDFA’S OPPOSITION TO TECHSAVIES’ MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1    Techsavies' primary argument is that oral agreements to transfer copyright ownership

2    must be in writing.  (Motion at 9, citing 17 U.S.C. § 204(a) and *Valente-Kritzer Video v.*

3    *Pinckney*, 881 F.2d 772, 774 (9th Cir. 1989).)   This point, while obviously true, is irrelevant for

4    two reasons.

5        First, unlike the defendant in *Valente-Kritzer Video,* Techsavies is not the author of  a

6    copyrighted work.   At the time the contract was entered, there was no "Collateralizer" software

7    in existence.  Techsavies did not have any copyright that it could transfer to WDFA.   <u>After</u>

8    entering the contract with WDFA, Techsavies secretly arranged to procure the software *and* an

9    assignment of the copyright from a third party, Ace Website Design.  (Sharp Dec. Ex. 32.)

10   Techsavies paid Ace Website Design less than $48,000 for the "Collateralizer" software  (*id*)

11   while collecting over $450,000 from WDFA.  (*Id.* Exs. 30-31.)

12       The purpose of the writing requirement of Section 204(a) is to protect "the creator of a

13   work" from being exploited.  *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990),

14   *cert. denied*, 498 U.S. 1103 (1991).  Copyright law protects authors.  Techsavies is not an author.

15   The authors of the "Collateralizer" software are unknown engineers in India who were employees

16   or independent contractors of Ace Website Design.  (Sharp Dec. Exh. 33 [Hajjoubi Depo. 149].)

17   Since Techsavies is not an author and owned no copyright at the time it entered it contract with

18   WDFA, Techsavies cannot hide behind section 204(a) to avoid liability for breach of contract.

19       A reasonable jury could find that Techsavies breached its contract with WDFA by having

20   Ace Website Design execute a copyright assignment in favor of Techsavies alone, rather than for

21   WDFA—the party who had commissioned the software and paid for it.   Certainly if the contract

22   is viewed as a partnership, it would be a violation of  Techsavies' contractual and fiduciary duties

23   as a partner to take ownership of the software for itself.  *Bardis v. Oates,* 119 Cal. App. 4th 1, 13

24   (2004) (partners "prohibited from engaging in self-dealing in any way, shape or form").  Where a

25   partner or joint venturer converts partnership property to his personal use, the innocent partner

26   has "cause of action for breach of contract and damages," in addition to other remedies such as

27   dissolution and breach of fiduciary duty.  *Gherman v. Colburn,* 72 Cal.App.3d 544, 564-565

28   (1977) (citing cases).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-17-

SFACTIVE-902250187.4

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

1    Nothing in 17 U.S.C. § 204(a) or elsewhere in the copyright act precludes two parties –

2    neither of whom is an author of a copyrighted work – from entering a contract by which one party

3    will procure copyrightable material from a third party and deliver it to the other.  Copyright law

4    protects authors—not commercial opportunists who seek to exploit low-paid authors for personal

5    economic gain.   Under California law, "If a contract is capable of two constructions courts are

6    bound to give such an interpretation as will make it lawful, operative, definite, reasonable, and

7    capable of being carried into effect . . ." *Edwards v. Arthur Anderson LLP*, 44 Cal.4th 937, 953-

8    54 (2008) (quoting  *Rodriguez v. Barnett*, 52 Cal.2d 154, 160 (1959); *see* Cal. Civil Code § 1643

9    ("A contract must receive such an interpretation as will make it lawful, operative, definite,

10   reasonable, and capable of being carried into effect, if it can be done without violating the

11   intention of the parties.").  It is not necessary to interpret the contract between WDFA and

12   Techsavies as contrary to 17 U.S.C. § 204(a).  The contract did not require Techsavies to transfer

13   ownership of a copyright without a writing.  Rather, the contract obligated Techsavies to develop

14   the website in a manner that "WDFA would remain the owner of the system."  Counterclaim

15   ¶ 21.  When Techsavies had the opportunity to obtain a written assignment from Ace Website

16   Design, Techsavies breached its contract with WDFA by taking the assignment for itself.

17       The second reason that Techsavies' attempt to invoke the copyright Statute of Frauds is

18   without merit is that a reasonable jury could find that there was an implied contract that conferred

19   a nonexclusive license on WDFA.  As set forth in Opposition to Techsavies' companion Motion

20   for Summary Judgment, an implied license is a species of implied contract governed by state

21   contract law.   *Foad v. Consulting Group, Inc. v. Musil Govan Azzalino*, 270 F.3d 821, 826 (9th

22   Cir. 2001)  ("A nonexclusive copyright license may be granted orally or by implication.")  A

23   reasonable jury could infer that the contract between Techsavies and WDFA included an implied

24   license for WDFA to use the website and its component software.  On this motion, such an

25   inference in favor of WDFA is mandatory.  *Hal Roach Studios, Inc.*, 896 F.2d at 1550 (all

26   reasonable inferences must be drawn in favor of the non-moving party).  For example, it is

27   reasonable to infer from Techsavies' promise to "implement" WDFA's system that it would

28   provide WDFA with access to the website.  Techsavies breached the contract by failing to honor

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-18-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1   the implied license.

2          As set forth in Paragraph 22 of the Counterclaim, the gravamen of WDFA's complaint is

3   Techsavies' breach of the covenant of good faith and fair dealing.  California law implies in ever

4   contract a covenant of good faith and fair dealing that "neither party will do anything which will

5   injure the right of the other to receive the benefits of the agreement."  *Kransco v. American*

6   *Empire Surplus Lines Ins. Co.,* 23 Cal.4th 390, 400 (2000).  A reasonable jury could find that

7   Techsavies breached the covenant of good faith and fair dealing by secretly arranging the

8   assignment of copyright from Ace Website Design to itself, by threatening to shut down the

9   project632.com website, and by refusing to turn over WDFA's customer database.

10         Techsavies' exorbitant, unwarranted demands for <u>additional</u> compensation, together with

11  its threats to cut off WDFA's access to the site and disclose the system to WDFA's primary

12  competitors and customers, and sequestering WDFA's customer data, all constitute actions in

13  breach of the parties' contract.  Techsavies took the position that it would refuse to perform under

14  its existing arrangement with WDFA unless WDFA capitulated to the condition that WDFA pay

15  Techsavies a higher "maintenance fee" than the $12,000 monthly fee that WDFA was currently

16  paying.  (Prasad Dec. Ex. 13.)  "Annexing an unwarranted condition to an offer of performance is

17  a refusal to perform."  *Johnson v. Goldberg*, 130 Cal. App. 2d 571, 576 (citing *Steelduct Co. v.*

18  *Henger-Seltzer Co.*, 26 Cal. 2d 634, 646 (1945).)  Such a refusal amounts to an "anticipatory

19  breach."  *Id.* (quotation omitted).

20         **F.      Techsavies Is Not Entitled to Judgment on WDFA's Fraud Claim.**

21         Techsavies next alleges that WDFA's fraud claim fails because (a) it did not allege any

22  misrepresentation by Techsavies, and (b) it did not allege reliance on Techsavies'

23  misrepresentation.  (Motion at 11:11-12:12.)  Techsavies only reaches this result by

24  mischaracterizing the allegations in WDFA's counterclaim.  The gravamen of WDFA's fraud

25  claim is Techsavies' false promise that they would "support WDFA's proprietary system," while

26  their true intention was "to claim ownership of the system for themselves."   (Counterclaim ¶ 28.)

27  Contrary to Techsavies' argument, Techsavies did not just promise to provide WDFA with

28  "programming services."  Rather, it promised services to "<u>support</u>" and "<u>implement</u>" the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-19-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1  "proprietary" system.  These promises were material misrepresentations, because Hajjoubi and

2  Conner secretly planned to claim ownership of the system for Techsavies.

3      California law has long recognized a cause of action for fraud based on the defendant's

4  making of a contractual promise with no intent to perform.  Cal. Civ. Code § 1710(4*); Service by*

5  *Medallion, Inc. v. Clorox Co,* 44 Cal.App.4th 1807, 1816 (1996).  The Ninth Circuit recognized

6  the validity of a fraud claim predicated on a copyright holders false oral promise to transfer

7  ownership of a copyrighted work in *Valente-Kritzer Video,* 881 F.2d at 776.

8      Fraudulent intent "is rarely established by direct evidence" and is typically inferred "from

9  various kinds of circumstantial evidence."  *Bradford v. Commissioner*, 796 F.2d 303, 307 (9th

10  Cir. 1986).  Techsavies' secret plans can be inferred from its behavior throughout the parties'

11  relationship.  During initial discussions, Techsavies agreed that WDFA would own the

12  intellectual property rights associated with www.project632.com.  When Mr. Prasad subsequently

13  sent Techsavies an contract memorializing this agreement, Techsavies did not disclose to Mr.

14  Prasad that his position was inaccurate, but instead simply did not respond.  Only after WDFA's

15  customers had come to rely on the website did Techsavies claim that at all times it intended to

16  retain the intellectual property rights.

17      By alleging that the amount paid was "far in excess of the value of the true services

18  provided," WDFA alleges that it would have acted differently had the extent of the fraud been

19  known at the time of the agreement.  (Counterclaim ¶ 29.)  *Jordan v. Paul Financial, LLC*, 2010

20  WL 2892261, *8 (N.D. Cal. Sept. 30, 2010) ("plaintiffs have sufficiently alleged reliance by

21  stating that the would have behaved differently " had they known the truth.).  WDFA does not

22  merely complain about the price for Techsavies' supposed "support," as claimed by Techsavies.

23  (Pl. Mot. 11:26-12:3.)

24      The huge amount of money paid by WDFA, however, does demonstrate WDFA's reliance

25  on Techsavies' promises.  As pleaded by WDFA, Techsavies' promises induced it to believe that

26  getting Techsavies involved in the project would increase the value of the proprietary system,

27  thereby justifying the expense.  However, if Techsavies secretly planned to discontinue support

28  for the system, disclose the proprietary system to others, and hold WDFA's data hostage, the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-20-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

price would hardly be worth it: after three years at $450,000, WDFA would have no website, a disadvantage relative to its competitors, and no customer data.  A reasonable jury can infer that WDFA would not have agreed to the arrangement had it known Techsavies' true intentions.

### G.   WDFA Can Establish Intentional Interference With Contractual Relations and Intentional Interference with Prospective Economic Advantage.

WDFA has set forth facts sufficient to plead both intentional interference with contract and intentional interference with prospective economic relations, and there are disputed issues of fact with regard to these claims.  In September 2009, WDFA requested that Techsavies return its proprietary database of customer information (such as order history, credit card information, and the like).  (Counterclaim ¶ 33; Prasad Decl. ¶ 24; Hilton Decl. ¶ 15.)  Techsavies refused, indicating that the data might "be lost" if WDFA did not agree Techsavies' demands. (Counterclaim ¶ 33; Hilton Decl. ¶ 15; Sharp Decl. Ex. 35, [Prasad Depo. 213:5-214:23].)  When Techsavies refused to return the data, WDFA was forced to assemble an incomplete and flawed customer database using the limited information that it had on hand.  (Hilton Decl. ¶ 14.)  This project required a huge amount of time and effort, and even then, it was incomplete and rife with errors.  (Hilton Decl. ¶ 14.)

First, regarding WDFA's intentional interference with contractual relations claim, Techsavies complains only that WDFA has not presented evidence that Techsavies' refusal to return WDFA's customer data caused "some sort of disruption of one of WDFA's contracts with MetroPCS" and resulting damages.  (Pl. Mot. 13:9-14:10 (raising no other issue with WDFA's pleading or evidentiary showing).)  However, as a result of WDFA's incomplete customer database, many franchisees experienced errors with their existing contracts.  (Hilton Decl. ¶ 15.) For example, certain customers were double-billed for a single order.  (*Id.*)  Many customers were irate about these problems and cancelled existing contracts as a result of them.  (*Id.*)  This disruption caused economic harm to WDFA in the form of increased expenses and lost sales. (*Id.*)  MetroPCS also complained to WDFA about the incomplete customer database and how it negatively affected WDFA's service to MetroPCS franchisees.  (*Id.* at ¶ 16.)  As a result, MetroPCS's co-payments to various advertising campaigns under its then-current contract with

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

1  MetroPCS decreased. (*Id.*) Thus, WDFA's performance of its contracts with MetroPCS was

2  "made more costly or more burdensome." *Pacific Gas & Electric Co. v. Bear Stearns & Co.,* 50

3  Cal.3d 1118, 1129 (1990) (citations omitted).

4        Second, Techsavies dismisses WDFA's intentional interference with prospective

5  economic advantage claim out of hand as improperly pleaded. (Pl. Mot. 12:19-22.) Techsavies'

6  narrow reading of WDFA's Answer and Counterclaim is unfair. Intentional interference with

7  prospective economic advantage occurs where (a) claimant has an economic relationship with a

8  third party with the probability of future economic benefit, (b) defendant knew of the relationship,

9  (c) defendant engaged in intentional, wrongful acts designed to disrupt the claimant's

10  relationship, (d) the economic relationship was disrupted, and (e) the intentionally wrongful acts

11  caused the disruption. *Korea Supply Co. v. Lockheed Martin Corp.*, 131 Cal. 4th 1134, 1154-55

12  (2003).

13        By holding WDFA's customer data hostage, Techsavies intentionally interfered with

14  WDFA's prospective economic advantage both with MetroPCS and with MetroPCS franchisees.

15  Techsavies certainly knew that WDFA had an economic relationship with MetroPCS and

16  MetroPCS franchisees. (Counterclaim ¶¶ 7, 31; Prasad Decl. ¶ 9, 11.) Even so, Techsavies

17  improperly withheld computerized, confidential data that franchisees of MetroPCS had

18  transmitted to WDFA. (Counterclaim at ¶ 33; Prasad Decl. ¶24; Hilton Decl. ¶ 14.) It did so in a

19  bald attempt to increase its leverage over WDFA. (Sharp Decl. Ex. 35 [Prasad Depo. 213:5-

20  214:23].) As a result of Techsavies' behavior, franchisees encountered severe problems with the

21  website, and stated that they would not sign up for www.project632.com projects in the future

22  because of the problems they experienced. (Counterclaim at ¶ 34; Hilton Decl. ¶¶15-16.)

23  MetroPCS, too, complained to WDFA about the problems its franchisees were having with the

24  website. (Hilton Decl. ¶ 16.) MetroPCS's dissatisfaction with WDFA negatively affected

25  WDFA's negotiating position for its future contracts (WDFA compete with other companies for

26  MetroPCS's advertising work). (*Id.*) Subsequently, WDFA did not secure as favorable a contract

27  with MetroPCS corporate as it otherwise would have. (*Id.*)

28  //

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-22-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4

1    **V.      CONCLUSION**

2          For all the foregoing reasons, Techsavies' Motion for Judgment on the Pleadings and/or

3    Summary Judgment should be denied.

4    Dated: February 23, 2011                              Crowell & Moring LLP

5

6                                                          /s/

7                                                   J. Daniel Sharp
                                                 Attorneys for Defendant
8                                               WDFA MARKETING, INC.

9    106077\0000001\902125189.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-23-

WDFA'S OPPOSITION TO TECHSAVIES' MOTION
FOR JUDGMENT ON THE PLEADINGS AND/OR
SUMMARY JUDGMENT; CASE NO. CV-10-1213-BZ

SFACTIVE-902250187.4